PRYOR, Circuit Judge:
Larry Eugene Mann kidnapped and murdered a ten-year-old girl in 1980, and a Florida trial court convicted and sentenced him to death. After appellate and collateral review, the Florida courts again sentenced Mann to death in 1983 and 1990. On March 1, 2013, the Governor signed a death warrant for Mann and scheduled his execution for April 10, 2013, at 6:00 p.m. Mann then filed in the district court a civil action to challenge the method of execution in Florida as cruel and unusual under the Eighth Amendment, 42 U.S.C. § 1983, even though Mann had filed a nearly identical complaint in 2010, which the district court had dismissed in 2011. On April 1, 2013, the district court dismissed Mann’s new complaint for failure to state a claim. See Fed.R.Civ.P. 12(b)(6). Mann now has moved this Court for a stay of execution and expedited consideration of his appeal of the dismissal of his complaint for failure to state a claim. We DENY the motion to expedite Mann’s appeal, and we DENY his motion for a stay of execution.
I. BACKGROUND
On December 10, 2010, Mann filed a complaint against Steven Singer, in his official capacity as the Warden of Florida State Prisons; Walter McNeil, in his official capacity as the Secretary of the Florida Department of Corrections; and Does 1-50, executioners for the State of Florida. The complaint raised several challenges, under the prohibition of cruel and unusual punishment in the Eighth Amendment, to the lethal injection protocol approved in 2007 by the State of Florida. See 42 U.S.C. § 1983. The complaint alleged that the use of sodium pentothal, also known as sodium thiopental, as the first drug in the three-drug protocol created a substantial risk of serious harm because the executioners lacked adequate training and experience to store, mix, prepare, and administer the drug; and the State of Florida lacked a safe, current, or adequate supply of sodium pentothal. The complaint also alleged that the use of pancuronium bromide as the second drug in the three-drug protocol substantially increased the risk that Mann would be conscious during an execution and unable to convey the torturous pain and suffering he experienced and served no legitimate purpose in the execution procedure. And the complaint alleged that the use of potassium chloride as the final drug in the three-drug protocol causes torturous pain to an inmate if the inmate is not adequately anesthetized during its administration, and the protocol lacked adequate safeguards for its administration. The complaint also alleged that the protocol did not adequately define the person to carry out a central venous line placement if peripheral venow access is not possible; that the protocol did not adequately provide for a trained and qualified individual to determine whether the inmate is in the surgical plane of anesthesia before the second and third drugs are administered; that the State has consistently failed to employ competent, trained personnel to perform executions; that the protocol did not allow for an individualized assessment of Mann’s specific medical conditions, including his diabetes and the scar tissue on his forearms, which could compromise venous access; and that the protocol included no safeguards in the event of a *1309 last minute stay of execution after the lethal injection process has begun.
On January 14, 2011, the district court sua sponte dismissed Mann’s complaint as without merit after the decision of the Supreme Court in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). Mann did not appeal the dismissal of his complaint.
Florida has since amended its protocol to substitute two new drugs for the drugs listed in the protocol approved in 2007. On June 8, 2011, Florida adopted a protocol that substituted pentobarbital for sodium pentothal as the first drug in the protocol. And on September 4, 2012, Florida adopted a protocol that substituted vecuro-nium bromide for pancuronium bromide as the second drug in the protocol.
On November 29, 2012, Mann began filing grievances with prison officials about the changes to the drugs. On December 3, 2012, the warden denied Mann’s emergency grievance and instructed him to file an informal grievance first and then a formal grievance. Mann then filed his informal grievance on December 17, 2012, and the warden denied the grievance on December 26, 2012. Mann filed a formal grievance on December 30, 2012, and the warden denied the grievance on January 22, 2013. Mann then filed a grievance with the Secretary of the Florida Department of Corrections on January 27, 2013, and the Department denied that grievance on February 8, 2013.
On February 18, 2013, Mann moved to intervene in a pending action against the warden and the Department that challenged the protocol adopted in 2011 and to amend the complaint in that action to challenge too the protocol adopted in 2012. On March 1, 2013, the Governor signed a death warrant for Mann and scheduled his execution for April 10, 2013, at 6:00 p.m. And on March 7, 2013, the district court denied Mann’s motion to intervene in the pending action.
On March 8, 2013, Mann filed a complaint against John Palmer, in his official capacity as the Warden of the Florida State Prison, and Michael D. Crews, in his official capacity as the Secretary of the Florida Department of Corrections. The complaint is nearly identical to Mann’s complaint filed in 2010. The only differences between the complaint Mann filed in 2013 and his earlier complaint are new allegations that pentobarbital is not interchangeable with sodium pentothal; that the protocol fails to specify the temperature at which pentobarbital must be stored; and that, because of the decision of the manufacturer to restrict the sale of pentobarbital for use in capital punishment, Florida must have expired, compounded, or illegally-obtained pentobarbi-tal that would not be safe to use in the lethal injection protocol. Mann also substituted the word “vecuronium” for the word “pancuronium” in his allegations about pancuronium bromide from his earlier complaint, but Mann failed to make any specific allegations about why vecuronium bromide is materially different from pan-curonium bromide.
The district court ordered Mann to file a memorandum that addressed whether his new complaint was barred by res judicata as a result of the dismissal of his earlier complaint. Mann argued that his claims were not barred because the parties were not identical, as he had not named Does 1-50, executioners for the State of Florida, in the action filed in 2013. Mann also argued that the complaint filed in 2013 presented a different cause of action because of the two changes to the drugs listed in the three-drug protocol. Finally, Mann argued that the dismissal of the complaint filed in 2010 relied on Baze, and the legal landscape had been “substantially altered” *1310 since Baze because of the availability of the one-drug protocol as a feasible alternative to the three-drug protocol.
The district court ordered the defendants to file a response to Mann’s new complaint. The defendants moved to dismiss or grant a summary judgment in their favor on the grounds that Mann’s new complaint was barred by res judicata, the statute of limitations, the failure to exhaust administrative remedies, and the failure to state a claim upon which relief could be granted.
On March 17, 2013, Mann filed a motion to amend his complaint to allege a new claim that he had been arbitrarily denied access to updated clemency proceedings by the Governor before he issued Mann’s death warrant, and Mann alleged that his due process rights were violated by a state law that prohibits capital collateral regional counsel from representing him in a civil action that challenges anything other than his method of execution. The defendants opposed the motion on the grounds that Mann had been dilatory and his new claims were futile. Specifically, the defendants argued that Mann knew updated clemency proceedings could commence after this Court denied a certificate of ap-pealability for the denial of Mann’s petition for a writ of habeas corpus on August 15, 2011, and that he was fully aware of all of the information and allegations in his motion to amend when he filed the action. The defendants also argued that Mann was previously given a clemency proceeding, which satisfied his right to due process. And the defendants argued that state law provided for' the appointment of independent clemency counsel and Mann had not sought appointment of that counsel, so the limitations on capital collateral regional counsel did not establish the denial of due process.
On April 1, 2013, the district court granted the defendants’ motion to dismiss and denied Mann’s motion to amend his complaint. The district court rejected Mann’s challenge to the three-drug protocol on the grounds identified in two recent unpublished decisions of our Court that rejected similar challenges to the three-drug protocol in Florida. And the district court denied Mann’s motion to amend because it would be futile. The district court explained that Mann had received a full clemency proceeding years ago at which he was represented by counsel and that due process did not require the Governor to grant him a new clemency proceeding.
II. DISCUSSION
Mann bears the burden of establishing that he is entitled to a stay of execution. “A stay of execution is equitable relief which this Court may grant only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest.” Valle v. Singer, 655 F.3d 1223, 1225 (11th Cir.2011). Mann’s motion fails at the first step of that analysis.
Mann cannot establish a substantial likelihood of success for three reasons. First, most of Mann’s claims are barred by res judicata. Second, Mann’s claims about the new drugs in the three-drug protocol are barred by the statute of limitations and, even if they were not, Mann has not stated plausible claims for relief under the Eighth Amendment. Third, Mann received due process in the clemency proceedings provided by the Governor. Because Mann cannot establish a substantial likelihood of success on the merits of his complaint, we deny Mann’s motion for a stay of execution.

*1311
A. Most of Mann’s Claims Are Barred by Res Judicata.

Most of the claims alleged in Mann’s complaint are barred by res judica-ta. “In the Eleventh Circuit, a party seeking to invoke the doctrine [of res judicata] must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.” In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir.2001). “The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies.” Id. Under that analysis, the dismissal of Mann’s earlier complaint bars most of the claims in Mann’s new complaint.
Mann concedes that the dismissal of his earlier complaint satisfies the first two elements of the doctrine of res judicata, but the parties dispute whether Mann’s earlier and later actions satisfy the last two elements. We address each of those elements in turn.
Mann argues that the cases do not involve the same parties because his first action named defendants who are not defendants in this action, but that argument fails. For the purpose of res judica-ta, identity of parties is satisfied if the parties to the second action were either parties to the first action or in privity with those parties. See E.E.O.C. v. Pemco Aer-oplex, Inc., 383 F.3d 1280, 1285 (11th Cir.2004). Because Mann’s new complaint is against the Warden and Secretary of the Department of Corrections in their official capacities, and his earlier complaint also named the Warden and Secretary of the Department of Corrections in their official capacities, the defendants have established identity of parties. See Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir.1995) (“[W]here a plaintiff brings an action against a public official in his official capacity, the suit is against the office that official represents, and not the official himself.”).
Mann also contends that his claims do not involve the same cause of action, but we disagree. “In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same ‘claim’ or ‘cause of action’ for purposes of res judicata.” In re Piper, 244 F.3d at 1297. Mann’s new complaint arises out of the same nucleus of operative facts as his earlier complaint.
Mann’s two complaints are nearly identical. In his latest complaint, he alleges the same constitutional errors in the lethal injection procedures, including the use of potassium chloride as the third drug in the three-drug protocol because it will cause torturous pain if the inmate is not sufficiently anesthetized before its administration; the failure of the protocol to establish a minimum experience requirement for some of the personnel involved in the lethal injection process; the failure of the protocol to require a physician to place a central venous line if necessary; the absence of guidelines for the exercise of discretion if foreseeable problems arise during an execution; the absence of standardized procedures for the purchase and administration of chemicals; the lack of a clear definition of “medically qualified” as pertaining to the two assigned executioners; the means of assessing consciousness after the administration of the first drug in the three-drug protocol; the method of *1312 remote drug administration through several feet of tubing; the procedure that dictates that the curtains between the witness room and execution chamber be closed in the event that something goes wrong during the execution; the “consistent fail[ure]” to hire sufficiently competent people to perform executions and to react to problems that occur during an execution; the absence of any procedures that require an individualized assessment of specific medical conditions of the inmate; and the lack of protocols to address the medical actions that must be taken to resuscitate an inmate if a stay of execution is entered during the administration of the three drugs. These claims all arise out of the same nucleus of operative facts alleged in the earlier complaint. It is irrelevant that Mann brought many of these claims under both the Constitution of the United States, the Constitution of the State of Florida, and a Florida statute in his new complaint, but only under the Constitution of the United States in his earlier complaint. See Maldonado v. U.S. Att’y Gen., 664 F.3d 1369, 1377 (11th Cir.2011) (“A new claim is barred by res judicata if it is based on a legal theory that was or could have been used in the prior action.”). Res judicata bars Mann from relitigating these claims.

B. Mann Cannot Establish a Substantial Likelihood of Success on the Merits of the Remaining Claims in His Complaint.

The only claims brought by Mann that are not barred by res judicata involve the new first and second drugs in the three-drug protocol. Mann’s new complaint challenges the substitution of pentobarbital for sodium pentothal as the first drug in the protocol. He alleges that pentobarbi-tal increases the risk that he will not be sufficiently unconscious before the administration of the second and third drugs, and he alleges that Florida lacks a safe, current, or adequate supply of pentobarbi-tal. Mann’s new complaint also makes allegations about vecuronium bromide, but those allegations are about the use of a paralytic drug in general and offer no basis on which we could conclude that vecu-ronium bromide operates in any manner different from pancuronium bromide.
Mann cannot establish a substantial likelihood of success on the merits of these claims for two reasons. First, these claims are barred by the statute of limitations. Second, even if these claims were not barred by the statute of limitations, Mann’s claims would fail on the merits.
1. Mann’s New Claims Are Barred by the Statute of Limitations.
 “[A] method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.” McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir.2008). Mann’s state review was complete on January 19, 1993, when the Supreme Court of the United States denied his petition for a writ of certiorari to the Supreme Court of Florida on direct appeal of the entry of his third death sentence. See Mann v. Florida, 506 U.S. 1085, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993). The statute of limitations for challenges to the adoption of lethal injection as the method of execution in Florida began to run on February 13, 2000, and expired on February -13, 2004. Henyard v. Sec’y, Dep’t of Corr., 543 F.3d 644, 647 (11th Cir.2008).
Mann contends that his claims with respect to the new drugs are timely because Florida made a substantial change to the method of execution, on June 8, 2011, when it substituted pentobarbital as the first drug in the three-drug protocol. Specifically, he alleges that pentobarbital dif *1313 fers significantly from sodium pentothal because it “is not classified as an ‘ultra short-acting barbiturate’ “is less lipid-soluble”; “is not FDA-approved for use as an anesthetic, and in clinical practice, it is not used to induce anesthesia”; and “there is no standard clinical dose of pentobarbi-tal to induce loss of consciousness or loss of sensation, making' it much harder to determine how much pentobarbital would constitute a sufficient overdose to induce anesthesia in the context of an execution.”
Because Mann is to be executed in Florida, we remain bound by our prior panel precedent in Valle that Florida did not make a significant change in its lethal injection protocol when it substituted pento-barbital for sodium pentothal. See 655 F.3d at 1233. Mann makes the same allegations about pentobarbital that we considered and rejected in Valle based on our prior panel precedents in DeYoung v. Owens, 646 F.3d 1319 (11th Cir.2011), Powell v. Thomas, 643 F.3d 1300 (11th Cir.2011), and Powell (Williams) v. Thomas, 641 F.3d 1255 (11th Cir.2011). See Valle, 655 F.3d at 1227-28 (rejecting the inmate’s allegations that “[the inmate] may be conscious after being injected with pentobar-bital, and thus subjected to significant pain during the administration of the final two drugs”; -that pentobarbital is “untested and unsafe for use in judicial lethal injections, has not been approved by the Food and Drug Administration (FDA) to induce anesthesia, has no relevant clinical history, and no relevant clinical reference doses on which to determine what dose would cause a clinically adequate depth of anesthesia, much less an adequate lethal injection dose”; and that the combination of the use of pentobarbital with the “inadequate training and experience of execution team members, inadequate monitoring of the IV lines, inadequate monitoring of consciousness by unqualified individuals, [and the] failure [of Florida] to conduct meaningful review of its processes” present a serious risk of undue pain and suffering (internal quotation marks omitted)). And, in Valle, we reaffirmed our statement in DeYoung that “the mere act of proffering additional reasons not expressly considered previously will not open the door to reconsideration of the [statute of limitations] question by a second panel.” See Valle, 655 F.3d at 1231 (quoting DeYoung, 646 F.3d at 1325).
Mann argues that we are bound, under Arthur v. Thomas, 674 F.3d 1257 (11th Cir.2012), to reverse the dismissal of his claims to allow him an opportunity for evidentiary development, but Mann misreads our narrow holding in Arthur. In that appeal, we reversed a dismissal of Arthur’s complaint under Rule 12(b)(6) because the district court had determined that it could not consider new allegations and evidence presented by Arthur that “there ha[d] been a ‘significant change’ to Alabama’s execution protocol.” See Arthur, 674 F.3d at 1260-61. Arthur attached to his complaint the affidavits of two experts who provided new “evidence of how pentobarbital is actually administered in Alabama.” Id. at 1262.- We concluded that Arthur’s complaint presented materially different facts from our earlier cases. Id. (“These significant differences between the factual allegations and supporting affidavits in this case, which we must assume to be true at the motion to dismiss stage, render Arthur’s case distinct from the facts and circumstances addressed in our' previous decisions.”). We explained that the district court should have considered the expert affidavits that Arthur had attached to his complaint and determined whether the facts alleged in his complaint were materially different from the allegations and evidence presented in our previous decisions in Powell and Powell (Williams). But if the allegations or evidence in Arthur had been materially the same as those presented in Powell, the district court would have been obliged to *1314 dismiss Arthur’s complaint as untimely. See Arthur, 674 F.3d at 1261-62; Powell, 643 F.3d at 1304-05.
Arthur did not hold, nor could it have, that every inmate who files a complaint that challenges the use of pentobarbital is entitled to an evidentiary hearing to determine whether the substitution of pentobar-bital is a substantial change in the method of execution. We had already foreclosed that argument in Powell, where we had held that an inmate’s complaint was governed by our prior panel precedent that the substitution of pentobarbital for sodium pentothal did not constitute a significant change for the purpose of the statute of limitations. See 643 F.3d at 1304-05. To read Arthur, as Mann contends, to require a district court to allow an inmate to conduct discovery every time the inmate alleges that the state has substantially altered its lethal injection procedures without first resolving whether the complaint is barred by the statute of limitations would be inconsistent with Arthur itself, which distinguished Powell, Valle, and DeYoung, and with our obligation to reconcile the holdings of our prior panel precedents if possible, see United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir.1993). Arthur also, by its terms, does not bind us when faced with challenges to the current lethal injection protocols of Florida and Georgia. See Arthur, 674 F.3d at 1261 & n. 4 (distinguishing our prior panel precedents in DeYoung and Valle on the basis that DeY-oung considered whether the substitution of pentobarbital for sodium pentothal was a substantial change to the lethal injection protocol in Georgia and Valle considered the same question in Florida, but Arthur concerned different facts about the lethal injection protocol in Alabama).
Because Mann cannot establish that the substitution of pentobarbital constituted a significant alteration to the method of execution in Florida, all of his claims not barred by res judicata are untimely. In his pleading and papers in the district court, Mann relied solely on the substitution of pentobarbital as the significant change in the method of execution that commenced the running of a new period of limitations. Mann never alleged that the substitution of the second drug in the protocol constituted a significant change to the method of execution in Florida. Indeed, Mann never alleged that vecuronium bromide differs in any material way from pancuronium bromide. Because Valle established that the substitution of pentobar-bital for sodium pentothal does not constitute a significant change in the method of execution in Florida, Mann’s claims are untimely.
2. Mann’s Claims Also Fail on the Merits.
Even if Mann’s claims were not untimely, Mann would not be able to establish a substantial likelihood of success on the merits. “To state an Eighth Amendment claim, [the defendant] must demonstrate that (1) the State is being deliberately indifferent (2) to a condition that poses a substantial risk of serious harm to him. In the lethal injection context, this standard requires an inmate to show an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.” Valle, 655 F.3d at 1225. Mann has two main theories upon which he claims that Florida has violated his Eighth Amendment rights, each of which fails to meet this standard.
First, Mann alleges that the substitutions of pentobarbital for sodium pen-tothal and vecuronium bromide for pancu-ronium bromide create a substantial risk of excruciating pain when compared to known and available alternatives, but *1315 Mann has not established a substantial likelihood of success on the merits of this claim. After Baze, an inmate who seeks a stay of execution must establish that the lethal injection protocol of his state creates a demonstrated risk of severe pain that is substantial when compared to the known alternatives. See 553 U.S. at 61, 128 S.Ct. at 1537. The Supreme Court has explained that “a lethal injection protocol substantially similar to the protocol [involving sodium pentothal, pancuronium bromide, and potassium chloride] [does] not create a risk that meets this standard.” Id. Because Mann does not allege that vecuronium bromide differs in any way from pancuronium bromide, he must rely solely on his allegations about pentobarbi-tal to meet this standard. With respect to pentobarbital, Mann alleges that the risk of harm to him by its use is increased because “pentobarbital is not []approved ■for use as an anesthetic [by the Food and Drug Administration],” “[p]entobarbital has an extended length of action due to its lower lipid solubility,” “there is no standard clinical dose of pentobarbital to induce loss of consciousness or loss of sensation,” and “[s]toring pentobarbital at a temperature cooler than recommended can slow down the time for the drug to take effect.” But these allegations fail. The Supreme Court has rejected the notion that the absence of approval by the Administration is sufficient to establish a, substantial risk of severe pain. Brewer v. Landrigan, — U.S. -, 131 S.Ct. 445, 178 L.Ed.2d 346 (2010) (vacating a temporary restraining order because speculation that a drug that has not been approved will lead to severe pain or suffering “cannot substitute for evidence that the use of the drug is sure or very likely to cause serious illness and needless suffering” (internal quotation marks omitted)). And the fact that pentobarbital might take longer to anesthetize the inmate does not create a demonstrated and substantial risk of severe pain. See Valle, 655 F.3d at 1237; DeYoung, 646 F.3d at 1327. Although Mann mentioned an alternative procedure in a memorandum filed in the district court, he “failed' to show that any such alternative procedure or drug is ‘feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.’ ” Valle, 655 F.3d at 1237 (quoting Baze, 553 U.S. at 52, 128 S.Ct. at 1532).
Second, Mann alleges that Florida lacks “a safe, current, or adequate supply of pentobarbital,” but he failed to state sufficient facts to make this claim plausible. See Fed.R.Civ.P. 12(b)(6). We take as true Mann’s allegations that the previous manufacturer of pentobarbital, Lundbeck, implemented a program in which it requires purchasers of pentobarbital to promise not to redistribute any purchased product without written authorization from Lundbeck and to agree not to make the product available for use in capital punishment. We also take as true his allegation that Akorn Pharmaceuticals maintains this restricted distribution program for pento-barbital. But we do not have to take as true Mann’s allegations “upon information and belief’ that the supply of pentobarbital possessed by Florida is either expired, illegally obtained, or compounded pentobarbi-tal. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 551, 557, 127 S.Ct. 1955, 1962-63, 1966, 167 L.Ed.2d 929 (2007) (declining to take as true the conclusory allegation “upon information and belief’ that the companies had entered a conspiracy without enough facts to make that statement plausible). Mann has not alleged enough facts to nudge his claim that Florida possesses only expired, illegally obtained, or compounded pentobarbital across the line from conceivable to plausible. See id. at 570, 127 S.Ct. at 1974.
Mann contends that Arthur forecloses the dismissal of his complaint on the mer *1316 its, but we disagree. Arthur does not preclude a district court from concluding that a death-row inmate has failed to state a plausible claim for relief on a motion to dismiss under Rule 12(b)(6). In Arthur, the district court had summarily dismissed the inmate’s complaint solely on the basis of the statute of limitations without considering any of the new allegations presented by Arthur about the administration of pen-tobarbital in Alabama and about the secrecy Alabama maintains about every aspect of its three-drug execution method, and we decided the narrow question whether that dismissal was appropriate. 674 F.3d at 1259. We did not consider whether Arthur had stated a plausible claim under the Eighth Amendment. Nor did we consider whether Arthur could establish that he had a substantial likelihood of success on the merits to warrant a stay of execution.

C. Mann Cannot Establish a Substantial Likelihood of Success on the Merits of His Claim About the Updated Clemency Proceedings.

Mann appeals the refusal of the district court to grant him leave to amend his complaint to state a claim that he was denied access to the updated clemency proceeding that took place before the Governor signed his death warrant, but Mann cannot establish a substantial likelihood of success on the merits of this claim. “We review the district court’s refusal to allow the proposed amendments for abuse of discretion.” Maynard v. Bd. of Regs. of the Div. of Univs. of the Fla. Dep’t of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1286 (11th Cir.2003). “Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment.” Id. at 1287 (internal quotation marks omitted). “[W]e review de novo a decision that a particular amendment to the complaint would be futile.” Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir.2007). The district court did not abuse its discretion when it denied Mann’s motion to amend his complaint because it correctly determined that the amendment would be futile.
Mann argues that the State of Florida violated his rights when the Governor considered an updated clemency investigation before he signed the death warrant and did not give Mann an opportunity to be heard and represented by counsel in those proceedings, but that argument fails. The Constitution of the State of Florida vests in the Governor, with the approval of two of his cabinet members, the discretion to commute the punishment of individuals not convicted of treason or impeachment. Fla. Const. Art. 4, § 8. Because clemency is committed to the discretion of the executive, due process provides only minimal protections for death-row inmates in the clemency process. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 289, 118 S.Ct. 1244, 1254, 140 L.Ed.2d 387 (1998) (O’Connor, J., concurring in part and concurring in the judgment). “Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process.” Id. Mann cannot show any violation of his due process rights in the clemency proceedings conducted by the State of Florida. The Governor conducted a full clemency hearing in 1985 before he signed Mann’s first death warrant. Court-appointed counsel represented Mann at that hearing. And Florida law did not obligate the Governor to grant Mann a second clemency hearing before he signed Mann’s current death warrant. Gore v. State, 91 So.3d 769, 779-80 (Fla.2012). “The process [Mann] received, including notice of the hearing and *1317 an opportunity to participate ... comports with [Florida’s] regulations and observes whatever limitations the Due Process Clause may impose on clemency proceedings.” Woodard, 523 U.S. at 290, 118 S.Ct. at 1254 (O’Connor, J., concurring in part and concurring in the judgment).
III. CONCLUSION
We DENY Mann’s motion to expedite his appeal, and we DENY Mann’s motion for a stay of execution.