[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11714
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-01803-ELR

DEZSO BENEDEK,
ANN BENEDEK,

Plaintiffs-Appellants,

versus

MICHAEL F. ADAMS,
NOEL FALLOWS,
JUDITH SHAW,
JANE GATEWOOD,
KASEE LASTER, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 12, 2018)

Before MARCUS, WILLIAM PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Dezso and Ann Benedek (collectively, "the Benedeks") appeal the district court's denial of Fed. R. Civ. P. 11 sanctions against the defendants and the court's Fed. R. Civ. P. 12(b)(6) dismissal of their amended complaint, which asserted § 1983 civil rights claims for First Amendment retaliation and conspiracy, claims for violation of 18 U.S.C. § 1961, et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and numerous state law claims.  The district court determined that the claims alleged against Judge Susan Edlein that concerned her rulings in a case over which she presided were barred by judicial immunity, any claims based on Judge Edlein's conduct in a separate mandamus proceeding were too conclusory to state a claim, and the federal claims against the remaining defendants were barred by res judicata.  The court declined to exercise supplemental jurisdiction over the Benedeks' state law claims and dismissed them without prejudice.  On appeal, the Benedeks assert that the district court erred in its dismissal and the denial of Rule 11 sanctions.  After review, we affirm.

I.

The relevant and complicated facts and legal history surrounding this case, as alleged in the Benedeks' 169-page amended complaint, are these.  Dezso Benedek was a professor at the University of Georgia ("UGA") and head of its Asian Language Program.  He developed study-abroad programs for students in Budapest and China.  Professor Benedek engaged in several acts of protest and

spoke out publicly against defendant Michael Adams, who was president of UGA at that time. In retaliation, the defendants allegedly denied academic credits to students seeking to participate in the study-abroad programs and denied general funding to the programs, and defendant Noel Fallows allegedly impersonated UGA students involved in these programs by hacking into their e-mail accounts to manufacture evidence harmful to Professor Benedek.

In October 2009, Professor Benedek's attorney complained about the retaliation to the Board of Regents of the University System of Georgia ("BOR"), a defendant in this action, and asked the Attorney General of Georgia to investigate. The Attorney General initiated formal tenure revocation proceedings against Benedek at UGA's request in July 2010. Specifically, Benedek was accused of forging transcripts and having undisclosed conflicts of interest concerning the study-abroad program. Benedek alleges in his complaint that defendants Fallows, Judith Shaw, Jane Gatewood, and Kasee Laster used manufactured evidence and perjured testimony against Benedek, and that they suppressed evidence helpful to the professor.

After a three-day hearing, a faculty committee found that Professor Benedek had been insubordinate for failing to provide information about his alleged conflicts of interest. The committee recommended that Benedek remain tenured but that credit and funding be denied to his study-abroad programs, and that he be

3

demoted as head of the Asian Language Program.  Adams accepted the findings and recommendations.  After an appeal, the BOR upheld Adams's decision in February 2011.  Professor Benedek and his wife, Ann, separated in May 2011.

In February 2013, Professor Benedek filed a civil complaint in Fulton County State Court against Adams, Fallows, Gatewood, and the BOR ("Benedek I").  The defendants removed the case to federal court, where a district court dismissed the § 1983 claims as time-barred and remanded the remaining state law claims in May 2013.  Professor Benedek attempted to amend his complaint again before dismissal, but the district court denied amendment.  He moved to stay dismissal and remand, arguing that he had leave to amend as of right, and that the new claims that he added, including federal RICO claims, extended the statute of limitations.  The district court denied the motion, concluding that Benedek could not amend his complaint a second time as a matter of course, and that the proposed amendment to the complaint did not raise federal RICO claims.  The court later denied a motion for reconsideration, and Professor Benedek did not appeal.

On remand in state court, Judge Edlein dismissed the remaining state law claims as barred by sovereign immunity and denied Professor Benedek leave to amend his complaint to add state RICO claims and name Georgia Attorney General Sam Olens as a defendant.  The Georgia Court of Appeals reversed because Judge Edlein used an incorrect standard to deny leave to amend.  On

remand, Judge Edlein allowed Professor Benedek to add Ann Benedek as a co-plaintiff and add state law claims. Judge Edlein again granted a motion to dismiss the claims on sovereign immunity grounds and denied a motion for sanctions. The Benedeks moved to vacate the dismissal order because Judge Edlein had entered it before giving them the agreed additional time to further amend the complaint. Judge Edlein vacated her dismissal to allow the Benedeks to amend their complaint.

After Judge Edlein ruled against Benedek several times, his attorney researched alleged connections between Judge Edlein and Olens. Counsel allegedly learned that Olens had sent substantial business to Judge Edlein's former law firm while she was a partner there, and Olens was on the Judicial Nominating Commission when Judge Edlein was appointed as a Fulton County State Court judge. The Benedeks moved for Judge Edlein to recuse herself, but she denied the motion. The Benedeks eventually voluntarily dismissed Benedek I in state court.

Before Benedek I was dismissed, Professor Benedek filed a second lawsuit in the Superior Court of Fulton County against Gatewood, Shaw, Laster, Fallows, and Olens, asserting state RICO claims arising out of the same allegations as were contained in Benedek I ("Benedek II"). The court dismissed the action, concluding that the state RICO claims were barred by res judicata because they concerned the same subject matter as the claims raised in Benedek I.

5

While Benedek I was pending, the Benedeks also sought an independent investigation into alleged wrongdoing during the tenure revocation proceedings. In November 2014, Olens made statements to the media that the Benedeks' claims were frivolous. The Benedeks claimed that Olens's statements were an effort to obstruct Benedek I and the requested independent investigation. Benedek then filed a mandamus action in Fulton County Superior Court against Judge Edlein. In response, Edlein denied any wrongdoing and sought attorney's fees under a Georgia statute. Benedek eventually voluntarily dismissed the mandamus action.

In June 2016, the Benedeks filed the instant action, raising claims based on interference with the study-abroad program, the tenure revocation proceeding, Professor Benedek's demotion and restrictions, Olens's media comments, and Judge Edlein's conduct. The district court denied the Benedeks' motion for Rule 11 sanctions against the defendants and granted the defendants' motions to dismiss. This timely appeal followed.

## II.

"We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation omitted). We also review the district court's res judicata determinations de novo.

6

Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1375 (11th Cir. 2011).  We review

the district court's denial of Rule 11 sanctions for abuse of discretion.  Worldwide

Primates, Inc. v. McGreal, 26 F.3d 1089, 1091 (11th Cir. 1994).

### III.

First, we are unpersuaded by the Benedeks' argument that the district court

erred in dismissing the claims they brought against Judge Edlein in the context of

the mandamus action they had filed.  To survive dismissal for failure to state a

claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007) (quotation and internal alterations omitted).  "Factual allegations

must be enough to raise a right to relief above the speculative level."  Id.  Mere

conclusory statements in support of a threadbare recital of the elements of a cause

of action will not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Benedeks mentioned the mandamus proceeding in their lengthy

complaint, they did not refer to the mandamus proceeding in the 50-page section

that listed their causes of action.  Instead, the complaint generally described

Edlein's claims and representations in the mandamus proceeding as

misrepresentations and efforts at obstruction, but these statements are too

conclusory to state a cause of action.  Id.  The Benedeks' allegation that Edlein

deprived Professor Benedek of due process by her actions outside her courtroom also was too conclusory to support a claim. Id. Thus, the district court properly held that the Benedeks failed to state claims based on Judge Edlein's conduct in the mandamus action.[1]

Nor did the district court err in holding that the remaining claims against Judge Edlein were barred by judicial immunity since they were based on Edlein's rulings in Benedek I. Under the doctrine of judicial immunity, a judge is entitled to absolute judicial immunity from damages for those acts taken while acting in a judicial capacity, unless they acted in the clear absence of all jurisdiction. Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000). Whether an act is done within a judge's judicial capacity is determined by "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Mireles v. Waco, 502 U.S. 9, 12 (1991) (quotation omitted).

For starters, we are unpersuaded by the Benedeks' claim that judicial immunity should not extend to courtroom acts that are purely ministerial. Even ministerial acts involved in managing a case's docket are functions "normally performed by a judge," and, thus, are within the contemplated protection of judicial

---

[1] The Benedeks raise several arguments regarding Judge Edlein's judicial immunity in the mandamus proceeding. The district court did not rule on Judge Edlein's immunity in that context, and we need not address it here because the district court correctly concluded that the Benedeks failed to state claims based on the mandamus proceeding.

immunity.    Mireles, 502 U.S. at 12.    Nor is there support for the Benedeks' argument that judicial rulings that deny a litigant a constitutional right should not be entitled to immunity.    Rather, a judge is entitled to judicial immunity even when she acts erroneously, maliciously, or in excess of her authority, so long as she acts with subject matter jurisdiction.    Dykes v. Hosemann, 776 F.2d 942, 947–48 (11th Cir. 1985).    Finally, as for the Benedeks' complaints about Judge Edlein's rulings in Benedek I and her failure to recuse herself, these too are normal judicial functions over which she had subject matter jurisdiction.    Story, 225 F.3d at 1239. Accordingly, the district court properly dismissed all claims against Judge Edlein.

We also find no merit to the argument that the district court erred in concluding that Benedek's federal claims against the remaining defendants were barred by res judicata.    The doctrine of res judicata has four elements: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) both cases involve the same parties or their privies; and (4) both cases involve the same causes of action.    Mann v. Palmer, 713 F.3d 1306, 1311 (11th Cir. 2013).    Res judicata applies if a claim raised in the new suit was raised or could have been raised in a previous case.    Id.    "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form."    Id. (quotation omitted).    As we've explained, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual

predicate, as a former action, . . . the two cases are really the same claim or cause of action for purposes of res judicata." Id. (quotation omitted).

As for the Benedeks' argument that they were unfairly denied an opportunity to present federal RICO claims in federal court in Benedek I, we disagree. The record reveals that Professor Benedek's second amended complaint in that case did not raise claims under the federal RICO statute. However, as the district court correctly held, their federal RICO claims were barred, even though they were not raised in Benedek I, because the claims arose "out of the same nucleus of operative fact" and were "based upon the same factual predicate" as the § 1983 claims in Benedek I. Mann, 713 F.3d at 1311. It does not matter whether the RICO claims would have been timely filed in Benedek I or would be timely filed now. The original dismissal of the § 1983 claims as untimely was a decision on the merits for res judicata purposes. Mathis v. Laird, 457 F.2d 926, 927 (5th Cir. 1972).[2]

As for the Benedeks' claim that the defendants' res judicata defense is barred by waiver and laches, the Benedeks did not make that argument in the district court. "[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation omitted).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

The Benedeks also argue that some of their claims had not accrued when the § 1983 claims were dismissed as untimely in <u>Benedek I</u>. Specifically, they argue that Olens made misrepresentations to the media to obstruct <u>Benedek I</u> in state court and an independent federal investigation <u>after</u> the federal district court's 2013 ruling.[3] They add that a § 1983 claim for retaliation for filing the original state court action and other unspecified events had not accrued at that time.

It is true that claims arising from facts that were not in existence at the time of the first federal action are not precluded. We've observed that

> the res judicata preclusion of claims that "could have been brought" in earlier litigation [does not] include[] claims which arise after the original pleading is filed in the earlier litigation. Instead, . . . for res judicata purposes, claims that "could have been brought" are claims <u>in existence at the time the original complaint is filed</u> or claims actually asserted . . . in the earlier action . . . . The underlying core of facts must be the same in both proceedings.

<u>In re Piper Aircraft Corp.</u>, 244 F.3d 1289, 1298, 1301 (11th Cir. 2001) (quotation omitted).

However, we can affirm on any basis supported by the record, regardless of whether the district court decided the case on that basis. <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1256 (11th Cir. 2001). And even if the Benedeks' § 1983 retaliation claim based on Olens's misrepresentations to the media was not precluded by the district court's dismissal in <u>Benedek I</u>, they did not sufficiently

---

[3] They also list conduct from the mandamus proceeding, which we've already addressed.

allege a First Amendment violation.  To state a claim for retaliation under the First Amendment, a plaintiff must allege that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions.  See Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008); Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).  We've explained that a defendant adversely affects protected speech if his alleged retaliatory conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1254 (quotation omitted).

In the complaint, the Benedeks allege that Olens made false statements to the media about the validity of their claims in an effort to obstruct the civil proceeding and an independent federal investigation.  However, it is unclear from the complaint how Olens's media statements affected the rulings in Benedek I or any federal investigation.  Moreover, media statements expressing an opinion that allegations are frivolous would not "deter a person of ordinary firmness" from attempting to exercise their rights.  Id.  Accordingly, the Benedeks failed to state a claim based on Olens's conduct after 2013.

Finally, we are unconvinced by Benedek's claim that the district court abused its discretion when it denied the Benedeks' motion for sanctions.  As an initial matter, we reject the Benedeks' argument that we should review the district

12

court's decision <u>de</u> <u>novo</u> because the district court avoided facts and arguments in its ruling. Although the district court did not address each argument raised by the Benedeks, the court examined whether the defendants raised frivolous arguments and correctly determined that at least some of the defenses raised were successful and dispositive. The court had more than an adequate factual basis for its ruling.

The standard used to evaluate an alleged violation of Rule 11 is "reasonableness under the circumstances." <u>Worldwide Primates</u>, 26 F.3d at 1091; <u>see</u> <u>Didie v. Howes</u>, 988 F.2d 1097, 1104 (11th Cir. 1993). A court has discretion to award Rule 11 sanctions: (1) when a party files a pleading without a reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. <u>Anderson v. Smithfield Foods, Inc.</u>, 353 F.3d 912, 915 (11th Cir. 2003) (quotation omitted). Under the objective standard, "[a]lthough sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." <u>Baker v. Alderman</u>, 158 F.3d 516, 524 (11th Cir. 1998) (footnote omitted). Thus, Rule 11 sanctions "may be appropriate when the plain language of an applicable statute and the case law preclude relief." <u>Id</u>. (footnote omitted).

13

Here, the district court did not abuse its discretion by concluding that sanctions were not warranted. Contrary to the Benedeks' claim, the defendants did not mislead the district court about the procedural history of the case. The defendants set out the procedural history in Benedek I, Benedek II, and the mandamus proceeding and provided state court orders in their filings. The defendants' assertions that three lawsuits had been filed based on the same factual predicate and that three courts had dismissed the claims were not entirely inaccurate. Although the dismissals in Benedek I were vacated, they were not vacated on the merits of the claims. Thus, the defendants did not show a deliberate indifference to obvious facts as it related to the procedural history of the case. Id.

The Benedeks also assert that the current action is a continuation of Benedek I, following a voluntary dismissal, in compliance with O.C.G.A. § 9-11-41. They argue that the defendants chose a federal forum by removing Benedek I from state court, and, therefore, their sovereign immunity defense was barred by the Supreme Court's ruling in Lapides v. Bd. of Regents of the Univ. Sys. Of Ga., 535 U.S. 613 (2002). But Lapides did not clearly foreclose the defendants' sovereign immunity defense. Although Lapides instructed that a state waives its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of federal courts, it did not address a scenario in which a federal forum is chosen by the plaintiff after a voluntary dismissal. Lapides, 535 U.S. at 619-20. Further, in Stroud v. McIntosh,

14

722 F.3d 1294, 1301 (11th Cir. 2013), we held that "a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts."

Finally, we disagree that the district court abused its discretion by failing to sanction the defendants for asking the court to restrict the Benedeks' filings of future claims based on the same factual predicate. The defendants' request was not without foundation because the Benedeks had filed the same or similar claims in three different courts, and the district court correctly determined that the federal claims were barred by res judicata. Thus, the defendants' request did not lack a reasonable factual basis and was not based on a legal theory with no reasonable chance of success. Anderson, 353 F.3d at 915.

Accordingly, we affirm the district court's order dismissing the Benedeks' claims and denying their motion for sanctions.

**AFFIRMED.**