David ZINK, et al., Appellants

Richard Strong and Marcellus
S. Williams, Intervenors

v.

George A. LOMBARDI,
et al., Appellees.

No. 14–2220.

United States Court of Appeals,
Eighth Circuit.

Aug. 1, 2014.

Judge Murphy, Judge Bye and Judge Kelly would grant the motion for stay. Judge Benton did not participate in the consideration or disposition of this motion.

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, SMITH, COLLOTON, GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

## ORDER

BYE, Circuit Judge, dissenting, with whom Judge KELLY joins.

Beginning in 2013, Missouri sought to accelerate the pace at which it carried out its executions by setting one execution per month. Since November 2013, the State has put eight of its citizens to death: Joseph Franklin (November 2013), Allen Nicklasson (December 2013), Herbert Smulls (January 2014), Michael Taylor (February 2014), Jeffrey Ferguson (March 2014), William Rousan (April 2014), John Winfield (June 2014), and John Middleton (July 2014). The State also sought to execute Russell Bucklew in May, but the Supreme Court stayed that execution due to Bucklew's serious health concerns. *Bucklew v. Lombardi*, —— U.S. ——, 134 S.Ct. 2333, 189 L.Ed.2d 206 (2014).

On December 11, 2013, Missouri executed Nicklasson before this Court had completed its review on whether Nicklasson's execution would violate the U.S. Constitution. This blatant disregard for a federal court's responsibility to review the constitutionality of an execution prompted me to author a dissenting opinion. *Nicklasson v. Lombardi*, No. 13–3664 (8th Cir. Dec. 20, 2013) (Bye, J., dissenting). I noted Missouri's "well-documented history of attempting to execute death row inmates before the federal courts can determine the constitutionality of the executions." I also noted Missouri's past usage of unwritten execution protocols, misrepresentation of dosage levels for drugs used in lethal injections, and permitting unfettered discretion to a dyslexic physician to mix drugs and oversee executions. These troubling patterns prompted "more than just a healthy judicial skepticism," and I promised to subject Missouri's future implementation of the penalty of death to "intense judicial scrutiny."

Since Missouri's self-imposed execution quota began in November 2013, numerous legal challenges raised serious concerns about Missouri's process. Most notably, perhaps, are the well-documented questions surrounding Missouri's lethal injection protocol. The State has refused to provide basic information concerning the source of the chemicals used. The chemicals are presumably not approved by the FDA and have been compounded by shadow pharmacies which may or may not be licensed. The quality of the chemicals is also in doubt, as the State has not permitted any outside testing and has conducted little, if any, testing of its own. Further, Missouri has repeatedly changed its protocol, which has made analyzing this moving target difficult. Missouri's tactics have frustrated legitimate efforts to evaluate whether the State's protocols comply with constitutional requirements.

Serious allegations have also been raised that members of the Missouri Department of Corrections have intimidated witnesses, discouraged participation with court-appointed counsel, and made other efforts to interfere with and frustrate inmates' efforts to raise claims in federal and state courts and with clemency petitions. *See Winfield v. Steele,* 755 F.3d 629 (8th Cir. 2014); *Middleton v. Roper,* No. 14–2667, 759 F.3d 831, 2014 WL 3454230 (8th Cir. July 15, 2014).

Missouri has executed inmates who had serious mental competency concerns and frustrated efforts to more fully evaluate the extent of their competency. *See Franklin v. Luebers,* No. 13–3506 (8th Cir. Nov. 20, 2013); *Middleton,* 2014 WL 3454230. It bears repeating the "Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." *Ford v. Wainwright,* 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Middleton also raised a viable claim of actual innocence, which, in my opinion, merited a stay of execution to fully investigate. *Middleton v. Roper,* No. 14–2645 (8th Cir. July 14, 2014). Throughout this process, I have not been able to understand Missouri's haste, especially when such serious questions have been raised.

Amidst the recent flurry of executions, Missouri also sought to execute Russell Bucklew, an inmate with a serious health concern affecting his circulatory system, cavernous hemangioma. The condition created a realistic possibility that Bucklew would suffer "a long, drawn-out, and painful death due to poor movement of the drug through his atypical circulatory system, or ... death via choking and suffocation [due to] anticipated ruptures of the weakened veins in his neck and face." *Bucklew v. Lombardi,* No. 14–2163, 565 Fed.Appx. 562, 564, 2014 WL 2724648, *1 (8th Cir. May 20, 2014). In spite of this indisputable possibility, the State made little effort to gain a greater understanding of Bucklew's condition and gave no indication it even considered Bucklew's unique circumstances. In fact, the State frustrated Bucklew's efforts to have an independent medical professional evaluate his current condition. Ultimately, the Supreme Court stayed Bucklew's execution to allow for greater consideration of his unique claims. These valid concerns are underscored by the apparently botched executions which have recently been carried out in other states, including Ohio (Dennis McGuire—January 2014), Oklahoma (Clayton Lockett—April 2014), and Arizona (Joseph Wood—July 2014).

If states are going to continue to impose this most severe of penalties, we should demand better than Missouri has done. We should expect a far more fair, sound, and transparent process. The State should be open about the drugs it is using and the suppliers who supply them. The State should welcome outside testing of the compounded chemicals to ensure all constitutional requirements have been satisfied. In addition, instead of interfering with and frustrating efforts to have the process reviewed by courts and the Governor of Missouri, the State should be actively assisting with those efforts. After all, the State has a significant interest in ensuring it does not execute someone who, for example, is mentally incompetent or actually innocent. The State's goal should be the fundamentally fair administration of a criminal justice system which actively strives to comport with constitutional requirements, instead of seemingly racing to the executioner's gurney as quickly as possible and at all costs.

The courts have made it easier and easier for Missouri to proceed with questionable and potentially problematic executions, while at the same time making it much

more difficult for death row inmates to vindicate their constitutional rights. The Constitution requires we hold ourselves to a higher standard, and that is what we should aspire to do. Having abided by my promise of "intense judicial scrutiny," I conclude Missouri continues to fall well-short of those aspirations.

Therefore, I respectfully dissent.