John E. WINFIELD, Plaintiff–
Appellee,

v.

Troy STEELE, Warden, Potosi Correctional Center; Terry Russell, Eastern Reception Diagnostic and Correctional Center; Director George Lombardi, Missouri Department of Corrections, Defendants–Appellants.

No. 14–2392.

United States Court of Appeals,
Eighth Circuit.

Submitted: June 17, 2014.

Filed: June 17, 2014.

Stephen D. Hawke, Assistant Attorney General, Jefferson City, MO, for Plaintiff–Appellee.

Joseph W. Luby, Jessica Sutton, Death Penalty Litigation Clinic, Kansas City, MO, for Defendants–Appellants.

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, MELLOY, SMITH, COLLOTON, GRUENDER, SHEPHERD, and KELLY, Circuit Judges, En Banc.

PER CURIAM.

Warden Troy Steele of the Potosi Correctional Center in Missouri moves to vacate a stay of execution entered by the district court on June 12, 2014, in the case of John E. Winfield. Winfield was convicted in Missouri state court of multiple counts of first degree murder, assault, and armed career criminal action and was sentenced to death. *See State v. Winfield,* 5 S.W.3d 505 (Mo.1999). In September 1996, he shot and blinded his ex-girlfriend and the mother of his children, Carmelita Donald. During the same incident, he shot and killed two of Carmelita's friends, Arthea Sanders and Shawnee Murphy. More than seventeen years after the murders, the Supreme Court of Missouri scheduled Winfield's execution for June 18, 2014.

On June 3, 2014, Winfield filed a lawsuit and moved to stay the execution based on a claim that state actors violated his right to due process of law by obstructing ef-

forts to secure a grant of clemency from the Governor of Missouri. Winfield alleged that employees of the Potosi Correctional Center threatened and pressured Terance Cole, the staff laundry manager at Potosi, not to make statements in support of Winfield's clemency efforts.

The district court held an evidentiary hearing on June 10 and then entered an order on June 12 that stayed Winfield's execution pending further order of the court. The court also preliminarily enjoined state officials "from obstructing, pressuring, discouraging, or otherwise threatening any correctional employees from providing statements in support of John E. Winfield's clemency efforts."

The gravamen of Winfield's complaint is that staff member Cole was prepared to submit a declaration in support of Winfield's request for clemency, but after an investigator with the Department of Corrections summoned him to investigate an allegation of "over-familiarity" with Winfield, Cole eventually rescinded his support. The record shows that Cole told Winfield's counsel on the weekend of May 17–18, 2014, that he was willing to provide a letter in support of clemency. On May 19, Cole informed his superiors about the contact with Winfield's counsel. On May 20, Cole was contacted by the investigator about alleged "over-familiarity." On May 22, Cole signed under penalty of perjury a declaration in support of clemency for Winfield.

On May 27, Cole told Winfield's counsel that he wished to rescind the declaration due to the pending investigation. On May 28, the investigator reported to the warden that the allegation against Cole of "over-familiarity" with Winfield was unfounded. On June 10, Cole testified in the district court that while he was not threatened by state officials, he did not wish to have his declaration presented to the governor in support of Winfield's clemency request. On June 12, the Department of Corrections sent Cole's signed declaration of May 22 to the governor's office for inclusion with a clemency package for the governor's consideration.

Winfield argues that state actors violated his due process rights by discouraging Cole from supporting a grant of clemency. Clemency in Missouri is a matter of grace committed to the executive department of the State. *See* Mo. Const. art. IV, § 7; Mo.Rev.Stat. §§ 217.800(1), 552.070. In *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), the Supreme Court addressed the application of the Due Process Clause to state clemency proceedings. A splintered Court rejected a claim that Ohio's clemency proceedings violated an inmate's constitutional right to due process. A plurality of four Justices emphasized that a request for clemency "is simply a unilateral hope," *id.* at 282, 118 S.Ct. 1244 (opinion of Rehnquist, C.J.) (internal quotation omitted), and suggested that the Due Process Clause has no application to the discretionary clemency process. A concurring opinion of four Justices concluded that "some *minimal* procedural safeguards apply to clemency proceedings," *id.* at 289, 118 S.Ct. 1244 (O'Connor, J., concurring in part and concurring in the judgment) (emphasis in original), but rejected the inmate's challenge to Ohio's procedures. Justice O'Connor wrote that "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* A separate opinion of Justice Stevens agreed with Justice O'Connor that some minimal procedural safeguards apply. *Id.*

at 290–91, 118 S.Ct. 1244 (Stevens, J., concurring in part and dissenting in part).

We conclude that Winfield has not demonstrated a significant possibility of success on his claim that the Missouri clemency process violated his rights under the Due Process Clause. *See Hill v. McDonough,* 547 U.S. 573, 584, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006). The district court thought Winfield was likely to prove that Cole changed his decision about supporting clemency because of the investigation undertaken by state officials starting on May 20. The court also believed that a finder of fact was not likely to believe the investigator's explanation for the timing of the inquiry—namely, that he was responding to an inmate's report in January 2014 that Cole had made personal visits to Winfield's family and attorney.

Even assuming the validity of those points, however, the Department of Corrections now has furnished Cole's signed declaration in support of clemency to the governor. The governor has before him the favorable information that Cole initially agreed to convey in support of clemency. There is no evidence that any other state employee has been deterred from speaking in support of clemency for Winfield.

Whatever *minimal* procedural safeguards might be guaranteed by the Due Process Clause in a clemency proceeding are likely satisfied here. The procedures employed by the state actors in this case may not have been ideal, but they do not approach the arbitrariness contemplated by Justice O'Connor in *Woodard:* a coin flip or an arbitrary denial of access to any clemency process.

The Department of Corrections responded to Winfield's allegations by ensuring that the governor received Cole's signed declaration. Winfield is free to apprise the governor about the events giving rise to this lawsuit if that information is deemed helpful to Winfield's cause. Winfield has been granted access to the clemency process, and any influence on that process by state actors communicating with Cole is insufficient to warrant a stay of execution under the circumstances. The decision in *Young v. Hayes,* 218 F.3d 850 (8th Cir.2000), is distinguishable on its facts, and we express no view in this opinion on the merits of *Young.*

For these reasons, we vacate the district court's order of June 12 staying the execution of John E. Winfield.

GRUENDER, Circuit Judge, concurring.

I concur in the court's per curiam opinion vacating the stay entered by the district court. However, for the reasons described below, on en banc review, I would overrule *Young v. Hayes,* 218 F.3d 850 (8th Cir.2000), and adopt a due-process standard more in line with relevant Supreme Court precedent and the approaches taken by other courts.

I believe that *Young* misapplied Justice O'Connor's concurring opinion in *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), which explained that "some *minimal* procedural safeguards apply to clemency proceedings. Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289, 118 S.Ct. 1244. *Young* failed to explain how the limited due-process protections recognized in *Woodard* prohibit the state from preventing a government employee from filing a letter in support of clemency. Instead, *Young* found—without substantial

explanation—a due-process violation despite the fact that the prisoner still could submit a clemency application and in the absence of any evidence that the governor would employ an utterly arbitrary process to consider the application. The same is true in this case. Thus, I conclude that *Young* lacks support in relevant Supreme Court authority.

*Young* also runs counter to the weight of authority from other courts. *Young* is an outlier when compared to the narrower approaches adopted by our sister circuits, which have taken to heart Justice O'Connor's emphasis on the word "minimal." *See Faulder v. Tex. Bd. of Pardons & Paroles,* 178 F.3d 343, 344–45 (5th Cir. 1999) (focusing on whether the "extreme situations" identified by Justice O'Connor were present); *Anderson v. Davis,* 279 F.3d 674, 676–77 (9th Cir.2002) (identifying ways in which a state might violate procedural due process in its operation of clemency procedures); *Duvall v. Keating,* 162 F.3d 1058, 1061 (10th Cir.1998); *see generally* Daniel T. Kobil, *Compelling Mercy: Judicial Review and the Clemency Power,* 9 St. Thomas L.J. 698, 726–28 (2012). I agree with the Tenth Circuit's position:

> Because clemency proceedings involve acts of mercy that are not constitutionally required, the minimal application of the Due Process Clause only ensures a death row prisoner that he or she will receive procedures explicitly set forth by state law, and that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin.

*Duvall,* 162 F.3d at 1061. Applying this rule in a highly analogous case, the Kentucky Supreme Court held that the state had not violated due process by preventing a death row inmate from interviewing prison employees and inmates to develop his clemency application. *Baze v. Thompson,* 302 S.W.3d 57, 59–60 (Ky.2010). The court noted that the prisoner still could file a clemency application and that "no Kentucky statute or constitutional provision creates a right to present a certain type of information in a clemency petition." *Id.* at 60.

Similarly, here, the State has not deprived Winfield of any process or procedure guaranteed to him by Missouri law. Winfield still can—and did—file a clemency application with the governor, and he has not pointed to any specific clemency procedure guaranteed by Missouri law that the State has withheld. Because Winfield has received the minimal due process recognized in *Woodard,* I would vacate the stay entered by the district court.

MURPHY, Circuit Judge, with whom BYE, MELLOY and KELLY, Circuit Judges, join, dissenting.

I would deny the motion to vacate the stay for several reasons.

After Terry Cole, an employee of the Missouri Department of Corrections, spoke with attorneys for John Winfield and agreed to provide support for his clemency petition the department opened an investigation on the next day. Questions were raised to Cole about his "over-familiarity" with Winfield, and Cole was also informed of allegations he had met with Winfield's family and attorneys. The district court[1] subsequently held an extensive evidentiary hearing, making findings of fact and conclusions of law. She concluded that Winfield was likely to

---

1. The Honorable Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri.

prove at a later trial that Cole had withdrawn his support for Winfield's clemency because he felt threatened. The district court subsequently granted Winfield's motions for stay of execution and preliminary injunction, enjoining state employees "from obstructing, pressuring, discouraging, or otherwise threatening any correctional employees from providing statements in support" of Winfield's clemency efforts. A panel of our court affirmed the district court.

One of the legal questions presented here is what adequate process is due in state clemency proceedings. While addressing this question, a majority of the Supreme Court rejected the notion that the discretionary nature of clemency removes a right to minimal due process. *See Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 288–89, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (O'Connor, J., concurring in part and concurring in the judgment, joined by Souter, Ginsburg, and Breyer, JJ.); *id.* at 290, 118 S.Ct. 1244 (Stevens, J., concurring in part and dissenting in part). Justice O'Connor disagreed "with the suggestion in the principal opinion that, because clemency is committed to the discretion of the executive, the Due Process Clause provides no constitutional safeguards," *id.* at 288, 118 S.Ct. 1244, and concluded that "some *minimal* procedural safeguards apply to clemency proceedings," *id.* at 289, 118 S.Ct. 1244 (emphasis in original). Justice Stevens, who would have gone further by remanding to determine whether due process requirements had been met, similarly concluded that postconviction proceedings must "comport with due process." *Id.* at 293–95, 118 S.Ct. 1244.

While Justice O'Connor's opinion in *Woodard* gave hypothetical examples to illustrate state procedures for which "[j]udicial intervention might ... be warrant-

ed," *id.* at 289, 118 S.Ct. 1244 (state official flipping a coin to make the clemency decision or arbitrary denial of access to the clemency process), the Court did not decide that these were the only circumstances in which a state clemency process could be fundamentally unfair. Justice O'Connor's hypothetical should not be read to set a firm boundary delineating the only two cognizable claims of clemency procedures which violate due process.

Our court has already concluded that a state's action to intimidate potential witnesses into withdrawing support for a clemency petition violates due process. *Young v. Hayes,* 218 F.3d 850 (8th Cir. 2000). In *Young,* we granted a stay of execution on facts remarkably similar to those Winfield has alleged here. *Id.* at 853. There, a state employee initially wished to provide support for an inmate's application, but after having her employment threatened, she partially withdrew her support and submitted to the governor only one of the two issues she had planned to raise for the inmate. We recognized that although executive clemency is not a constitutionally required process, once the state itself elects to create the process it must "refrain from frustrating it by the threatening the job of a witness." *Id.* at 853. Our court has again explained this requirement of fundamental fairness in the clemency process in *Noel v. Norris,* 336 F.3d 648, 649 (8th Cir.2003) ("[I]f the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated.").

As the experienced district judge concluded after an evidentiary hearing, Winfield is likely to prove at a later trial that state employees took action to intimidate Cole and thus successfully dissuaded him from supporting Winfield's clemency application. After hearing the evidence, the

district court found that Cole felt threatened by the state's investigation and therefore withdrew his support for Winfield's clemency. Here, as in *Young*, the state appears to have exercised the considerable influence it has to induce its employee to withhold evidence and support for a clemency petition, and "such conduct on the part of a state official is fundamentally unfair." *See id.* at 853.

After the district court's entry of a stay, the Department of Corrections sent the governor a declaration which Cole had signed on May 22, 2014. At the evidentiary hearing held after he signed this statement, Cole confirmed publicly that he no longer wished to provide a letter or support for Winfield's clemency application. The fact that the state sent this statement to the governor would not alter a conclusion that Winfield's due process rights have been violated. There is a significant difference between the governor receiving a committed voluntary statement in support of clemency and a later disavowed statement sent on behalf of a pressured witness. To conclude otherwise would ignore reality. Additional questions of fact remain as to what other evidence Cole might yet supply in the absence of state interference.

For these reasons, I would deny the motion to vacate the stay and allow Winfield an opportunity to proceed on his due process claim.

BYE, Circuit Judge, with whom MURPHY, MELLOY, and KELLY, Circuit Judges, join, dissenting.

I would deny the motion to vacate the stay of execution entered by the district court on June 12, 2014.

First, I point out the Court's failure to acknowledge the appropriate standard of review in this matter. A district court's order granting a stay of execution is re-viewed for an abuse of discretion. *Jones v. Hobbs*, 604 F.3d 580, 581 (8th Cir.2010). It is unclear to me how the district court can be said to have abused its discretion in granting a stay of Winfield's execution. The district court correctly identified *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000), as controlling precedent, and properly applied *Young* to the claims raised by Winfield. Winfield alleged Missouri Department of Corrections ("MDOC") officials deliberately interfered with his clemency petition by threatening and harassing Terry Cole, the laundry director at Potosi Correctional Center, where Winfield is incarcerated, which, according to *Young*, is sufficient to state a claim under the Due Process Clause.

The Court acknowledges as it must that Justice O'Connor's plurality opinion in *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288–89, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), supports the conclusion that a state's arbitrary action during a clemency process might be a due process violation. This Court first applied Justice O'Connor's opinion in *Young*, 218 F.3d at 850. There, we ruled "[t]he Constitution of the United States does not require that a state have a clemency procedure, but ... it does require that, if such a procedure is created, the state's own officials refrain from frustrating it[.]" *Id.* at 853. This Court clarified this standard to say that a state may not "deliberately interfere[ ] with [a prisoner's] efforts to present evidence to the governor in connection with [the prisoner's] clemency proceeding." *Roll v. Carnahan*, 225 F.3d 1016, 1018 (8th Cir.2000) (affirming dismissal of a claim which did not so allege).

This, indeed, is minimal. Courts need not search for a metaphorical coin flip, or an arbitrary denial of access. Instead, we only need ask that states do not deliberately disobey their own rules regarding

clemency procedures. Here, Missouri's clemency procedure is set forth by state law. The Governor of Missouri is authorized to grant clemency. *See* Mo. Const. art. IV, § 7; Mo. Rev. St. § 217.800(1). To do so, the Governor may "appoint a board of inquiry whose duty it shall be to gather information, whether or not admissible in a court of law, bearing upon whether or not a person condemned to death should be executed or reprieved or pardoned." Mo. Ann. Stat. § 552.070. The statute goes on to mandate *"the duty of all persons and institutions* to give information and assistance to the board[.]" *Id.* (emphasis added). In order to determine minimal due process, then, this Court should ask whether a Missourian, duty-bound to assist in the clemency proceeding, deliberately interfered with or frustrated another from giving information to the board. We need not consider whether the state's actions amounted to a coin flip, especially when Missouri's laws are so clear as to what is minimally required.

Here, the MDOC's actions cannot simply be classified as an arbitrary denial of access to any clemency process, for its conduct was much worse. Instead, the MDOC took affirmative steps to actively frustrate Winfield's efforts to present a clemency petition to the Governor. The MDOC was duty-bound to assist the clemency procedure. Assisting cannot co-exist with a retaliatory investigation against an individual following his own duty to assist the clemency procedure. Thus, Winfield's allegations satisfy the standard this Court set forth. *Woodard,* 523 U.S. at 288–89, 118 S.Ct. 1244; *Young,* 218 F.3d at 850; *Roll,* 223 F.3d at 1018; *Noel v. Norris,* 336 F.3d 648, 649 (8th Cir.2003) ("[I]f the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated."). Having concluded Winfield successfully alleged a due process violation, the district court correctly concluded Winfield was likely to succeed on the merits and, thus, a stay of execution was not an abuse of discretion.

Finally, the State's decision to submit Mr. Cole's retracted statement to the Governor's office does not eliminate the due process violation or render Winfield's case moot. *See Young,* 218 F.3d at 852. It was the State's "heavy burden" to demonstrate the MDOC would not attempt to further coerce Mr. Cole or interfere with his or other employees' efforts to support Winfield's clemency petition, and the State failed to do so. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). As the district court noted, a reasonable trier of fact could conclude Mr. Cole's change of heart and unwillingness to support Winfield's clemency was the result of ongoing pressure from the MDOC. The State does not contend that Winfield's allegations of intimidation are without merit, and, in fact, it implicitly concedes the allegations are true. Due to the MDOC's previous interference with one employee's efforts to support Winfield's clemency, it was not an abuse of discretion for the district court to conclude the intimidation and interference could be reasonably expected to recur.

Because the district court thoughtfully considered Winfield's allegations, conducted a thorough evidentiary hearing, and properly applied controlling Eighth Circuit and Supreme Court precedent, I do not see how it can have abused its discretion. Therefore, I respectfully dissent.