[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10884
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00610-TWT


KELLY RENEE GISSENDANER,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN,

                                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 24, 2015)

Before ED CARNES, Chief Judge, TJFOLAT and JORDAN, Circuit Judges.

ED CARNES, Chief Judge:

　　Kelly Gissendaner, a Georgia death row inmate, appeals the district court's

dismissal of her 42 U.S.C. § 1983 complaint.  Her complaint alleges that her

federal due process rights were violated when the warden of the prison where she was housed ordered the prison staff not to speak with Gissendaner's legal team as they were gathering evidence in support of her application for clemency.

## I.

Gissendaner was convicted of malice murder and sentenced to death for masterminding the brutal murder of her husband.  See Gissendaner v. State, 532 S.E.2d 677, 681–83 (Ga. 2000).  She tried (and failed) in state and federal court to challenge her conviction and sentence.[1]  On February 9, 2015, the Superior Court of Gwinnett County issued an order directing the Georgia Department of Corrections to execute Gissendaner.  The order created a seven-day window for the execution, lasting from February 25 to March 4, 2015.  See Ga. Code § 17-10-40(b).  The original execution date was set for February 25.

Anticipating that an execution date would be set in early 2015, Gissendaner's legal team (which included both her attorneys and an investigator working on her behalf) had begun in late 2014 to prepare an application for state clemency.  Her application would be heard by the State Board of Pardons and Paroles, which has the power to grant executive clemency to the State's prisoners. Ga. Const. art. IV, § 2(2); see Ga. Code § 42-9-1 et seq.  As part of their

---

[1] Those challenges are set out in Gissendaner v. Seaboldt, 735 F.3d 1311 (11th Cir. 2013); Gissendaner v. State, 532 S.E.2d 677 (Ga. 2000); and Gissendaner v. State, 500 S.E.2d 577 (Ga. 1998).

2

preparations, Gissendaner's legal team interviewed a number of the staff working at Lee Arrendale State Prison and Metro State Prison. Arrendale is the prison where Gissendaner is currently housed, and Metro is the prison where Gissendaner was previously housed. Early on, four Arrendale staff members provided her legal team with written statements in support of Gissendaner.

Eight other staff members at Arrendale and Metro expressed a willingness to support Gissendaner — either through written statements or testimony at the clemency hearing. Those eight staff members, however, changed their mind after the warden at Arrendale, Kathleen Kennedy, issued a memo in January 2015 to all prison staff.[2] The memo was titled "Public Information / Media Contact" and stated:

> An execution date might be scheduled in the immediate future for our inmate under death sentence. This action will likely bring a lot of publicity to [Arrendale].
>
> Be advised that if ANYONE calls you with questions regarding this issue, you are to refer them to the DOC Public Affairs office . . . .
>
> Under no circumstances are you to discuss this with people outside this institution. Staff should also be careful what is said to other inmates and personal feelings are to be suppressed. If you have questions or concerns, please contact Warden Kennedy or Deputy Warden Tatum.

_____

[2] It is not clear whether the memo went to just Arrendale staff members or to Metro staff members as well. We will assume it went to both. See Arthur v. King, 500 F.3d 1335, 1339 (11th Cir. 2007) (explaining that, in an appeal from a Rule 12(b)(6) dismissal, we must "accept[] the complaint's allegations as true and constru[e] them in the light most favorable to the plaintiff").

3

After receiving the memo, the eight staff members withdrew their commitments to offer statements or testimony supporting Gissendaner. And when Gissendaner's legal team approached other staff members at the prisons about her clemency proceedings, the staff members refused to testify or provide written statements. Some of the staff members told Gissendaner's investigator that "they could not help based on a [Department of Corrections] directive and, further, that they feared that if they did, their jobs would be at stake."

Gissendaner filed her application for clemency on February 20, 2015, and the Board notified her that it would hold a hearing on her application on February 24. At the hearing, Gissendaner's attorneys appeared on her behalf and presented testimony from fifteen witnesses plus thirteen written statements of support from current and former staff members at Arrendale and Metro, as well as other evidence. Of the fifteen witnesses to actually testify on her behalf at the hearing, the only one who was a staff member at the time of the hearing was Chaplain Susan Bishop of Arrendale. The four Arrendale staff members who had submitted written statements before Warden Kennedy issued her memo did not withdraw their statements, and those four written statements were presented to the Board at the hearing.

The morning after the hearing, the Board denied Gissendaner's application for clemency. At the time, her execution was still scheduled for that evening. A

4

few hours after the Board's decision, however, predictions of inclement weather led the State to postpone the execution until 7:00 p.m. Eastern Standard Time on March 2, 2015, which was five days away.

The day before her rescheduled execution was to take place, Gissendaner obtained a copy of Warden Kennedy's memo. The next day, the day she was rescheduled to be executed, Gissendaner filed a 42 U.S.C. § 1983 lawsuit claiming that her due process rights had been violated because the warden's memo had interfered with her ability to obtain and present evidence in support of her application for clemency. Because her rescheduled execution was only hours away, she also filed motions for a preliminary injunction and for a stay of execution. That same day, the State moved to dismiss Gissendaner's complaint, and the district court held a hearing on the various motions. After the hearing, the district court issued an order denying Gissendaner's motions and granting the State's motion to dismiss her complaint. Even though it denied her motions for an indefinite stay and an injunction, the court granted Gissendaner a 24-hour stay so that this Court could hear her appeal.

That evening both parties filed notices of appeal. Gissendaner's appeal challenged the dismissal of her complaint and the denial of her motions for a stay and a preliminary injunction. The State's appeal challenged the district court's 24-hour stay. This Court issued an order in the State's appeal dissolving the 24-hour

5

stay because, based on our review of the record and the parties' submissions, we did not need any more time to conclude that Gissendaner had not demonstrated the substantial likelihood of success on the merits required to justify a stay. Our order allowed the State to proceed with the execution, but around 10:20 p.m. the State postponed the execution because of concerns about the condition of the drugs that were to be used in the execution. Two days later, we ordered that the State's appeal be closed because it had already received the relief it sought in that appeal — vacatur of the 24-hour stay.

This is Gissendaner's appeal from the order dismissing her complaint.[3]

## II.

"We review a district court's dismissal under Rule 12(b)(6) for failure to state a claim de novo, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." Arthur, 500 F.3d at 1339.

Gissendaner contends that her complaint states a claim for relief under the Due Process Clause. See U.S. Const. Amend. XIV, § 1. In her view, the Clause "demands that a prisoner seeking clemency must receive the process that the state has established for all clemency petitioners." She points to the version of Georgia Code § 42-9-43 in force at the time of her hearing, which instructs the Board to

---

[3] Though her notice of appeal refers to the denial of her motions for a stay and for a preliminary injunction, Gissendaner's brief challenges only the dismissal of her complaint. In any event, our decision that the complaint fails to state a claim for relief moots any issues regarding a stay or a preliminary injunction. See Arthur, 500 F.3d at 1344.

6

"cause to be brought before it all pertinent information on the person in question" when considering an application for clemency.[4]  See Ga. Code § 42-9-43(a).  From there, she argues that Warden Kennedy's memo interfered with the procedure created by § 42-9-43 — and thereby violated her due process rights — because the memo prevented her from obtaining pertinent evidence and presenting it to the Board.  But the procedural component of the Due Process Clause does not require the States to comply with state-created procedural rules.  Instead, it requires them to adhere to a certain minimal level of process when seeking to deprive an individual of a substantive interest protected by the Clause — namely, "life, liberty, or property."  U.S. Const. Amend. XIV, § 1.

## A.

The Supreme Court's decision in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 118 S. Ct. 1244 (1998), did recognize a due process interest in the context of state clemency proceedings for death row inmates.  The holding in that case was provided by Justice O'Connor's concurring opinion.  Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1268, 1269 n.2 (11th Cir. 2014) (recognizing Justice O'Connor's concurring opinion as "set[ting] binding

---

[4] Since the Board's decision on Gissendaner's application, Georgia Code § 42-9-43 has been amended to include two additional categories of "pertinent information" that the Board must "cause to be brought before it."  Compare 2015 Ga. Laws Act 43, § 4 (eff. July 1, 2015) (identifying eight categories of "pertinent information"), with 2013 Ga. Laws 222, 242 § 19 (identifying six categories of "pertinent information").  We discuss the version in force at the time of the Board's decision.

7

precedent"). Her opinion acknowledges that the "life" interest protected by the Due Process Clause itself guarantees "some minimal procedural safeguards" for state clemency proceedings involving death row inmates. Woodard, 523 U.S. at 289, 118 S. Ct. at 1254 (O'Connor, J., concurring).

The key word here is "minimal." Justice O'Connor's opinion concludes that the prisoner in Woodard had received adequate process despite the fact that he was given only a few days notice of his hearing, that he was interviewed by the parole board without his attorney present, that his attorney was "permitted to participate in the hearing only at the discretion of the parole board chair," and that the prisoner "was precluded from testifying or submitting documentary evidence at the hearing." Id. at 289–90, 118 S. Ct. at 1254. That procedure, it was held, satisfied "whatever limitations the Due Process Clause may impose on clemency proceedings."[5] Id. at 290, 118 S. Ct. at 1254 (emphasis added). The only circumstances that Justice O'Connor's opinion identifies in which due process would be offended are truly outrageous ones, such as (1) "a scheme whereby a

---

[5] As a general rule, the two basic requirements of the Due Process Clause are notice and an opportunity to be heard prior to the deprivation of life, liberty, or property. See Texaco, Inc. v. Short, 454 U.S. 516, 534, 102 S. Ct. 781, 795 (1982) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.") (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656–57 (1950)); see generally Hon. Henry J. Friendly, "Some Kind of Hearing", 123 U. Pa. L. Rev. 1267 (1975). But Justice O'Connor's opinion in Woodard does not state that either of those requirements applies to state clemency proceedings.

state official flipped a coin to determine whether to grant clemency," or (2) "a case where the State arbitrarily denied a prisoner any access to its clemency process." Id. at 289, 118 S. Ct. at 1254 (emphasis added).  Outside of similarly "extreme situations," the federal Due Process Clause does not justify judicial intervention into state clemency proceedings.  Faulder v. Tex. Bd. of Pardons & Paroles, 178 F.3d 343, 344 (5th Cir. 1999).

The process that Gissendaner received was at least equal to the process that passed constitutional muster in Woodard.  The Board gave her notice of the hearing, permitted her to present favorable testimony from some fifteen witnesses, and allowed her to submit thirteen written statements from prison staff supporting her application.  That clearly satisfies "whatever limitations the Due Process Clause may impose on clemency proceedings."  Woodard, 523 U.S. at 290, 118 S. Ct. at 1254 (O'Connor, J., concurring) (holding that "notice of the hearing and an opportunity to participate in an interview" was enough).

Gissendaner latches onto a single phrase in Justice O'Connor's concurring opinion to support the argument that her clemency proceeding was inadequate under Woodard.  That phrase is "comports with Ohio's regulations," which is found in the following statement:  "The process respondent received, including notice of the hearing and an opportunity to participate in an interview, comports with Ohio's regulations and observes whatever limitations the Due Process Clause

9

may impose on clemency proceedings." Id.  Gissendaner argues that, because

Warden Kennedy's memo did not, in her view, comport with Georgia Code § 42-9-

43, her clemency proceeding did not meet the standard set by Woodard.  Even

assuming that the memo violated Georgia law,[6] however, her argument fails.

**B.**

For starters, Gissendaner's argument is foreclosed by our decision in

Wellons, 754 F.3d at 1269.  Wellons involved another Georgia death row inmate's

challenge to the constitutionality of his clemency proceedings.  See id.  The

prisoner asserted that, because of actions taken by Georgia prison officials, "at

least one corrections officer employed at the Georgia Diagnostic and Classification

Prison, who was previously willing to provide a statement in support of clemency

on Wellons's behalf, now refuses to do so for fear of losing his or her job."  Id.

Applying Woodard, we held that, given the "very limited due process interest in

clemency proceedings," the prisoner "ha[d] failed to show a substantial likelihood

of success on his claim that he enjoys a due process or other Constitutional right

---

[6] It is not at all clear that Gissendaner's clemency proceeding violated Georgia Code § 42-9-43 since the statute:  (1) does not give a prisoner the right to interview prison staff and present their testimony to the Board; and (2) does not require the Board to interview prison staff members.  The statute states:  "The board, in considering any case within its power, shall cause to be brought before it all pertinent information on the person in question."  Ga. Code § 42-9-43(a).  But none of the six sources of "pertinent information" listed in § 42-9-43(a) at the time of Gissendaner's clemency hearing include direct testimony or written statements from prison staff.  See id. § 42-9-43(a)(1)–(6).  The statute grants discretion to the Board — not a right to the prisoner — to supplement those six sources of information "as it may deem necessary."  Id. § 42-9-43(c).  So limiting Gissendaner's access to prison staff does not appear to violate any of the statute's requirements.  But we will assume it does.

10

with respect to his petition for clemency." Wellons, 754 F.3d at 1269 (citing Woodard, 523 U.S. at 283–85, 118 S. Ct. at 1251 (opinion of Rehnquist, C.J.); id. at 288–89, 118 S. Ct. at 1253 (O'Connor, J., concurring)).  In other words, the Due Process Clause does not guarantee state prisoners a right to acquire and present testimony from prison staff in support of an application for clemency, nor does it bar state officials from limiting prisoners' access to such testimony.

Gissendaner's attempt to distinguish Wellons is unavailing.  She points out that the prisoner in Wellons had presented "little evidence of interference beyond one employee's independent recollection," whereas she has presented a copy of Warden Kennedy's memo and an affidavit showing that "several" prison staff members had understood the memo to mean that "speaking out on behalf of Ms. Gissendaner would place their jobs in peril."  That is a distinction, but it makes no difference.  Wellons' holding rested on the "very limited" nature of the "due process interest in clemency proceedings," not on the factual support accompanying the prisoner's complaint.  754 F.3d at 1269.  And "the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court."  Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).  Wellons therefore controls the outcome here and dictates that we affirm the dismissal of the complaint.

11

## C.

Even if Wellons were distinguishable, we would still reject Gissendaner's reading of Woodard. Nothing in Justice O'Connor's concurring opinion suggests that a clemency board's compliance with state laws or procedures is part of the "minimal procedural safeguards" protected by the Due Process Clause. See Woodard, 523 U.S. at 288–90, 118 S. Ct. at 1253–54 (O'Connor, J., concurring). It is a far cry from the denial of access circumstance the opinion describes where a due process violation "might" occur, which is "where the State arbitrarily denied a prisoner any access to its clemency process."[7] See id. at 289, 118 S. Ct. at 1254 (emphasis added). Adopting Gissendaner's reading of Justice O'Connor's opinion would conflict with a long line of Supreme Court decisions holding that a violation of state procedural law does not itself give rise to a due process claim. See, e.g., Sandin v. Conner, 515 U.S. 472, 482, 115 S. Ct. 2293, 2299 (1995) (decrying the notion that a violation of state prison regulations provides a basis for a procedural due process claim because it "creates disincentives for States to codify prison management procedures"); Olim v. Wakinekona, 461 U.S. 238, 250–51, 103 S. Ct.

---

[7] The same goes for our decision in Mann v. Palmer, 713 F.3d 1306 (11th Cir. 2013). We did say: "The process [Mann] received, including notice of the hearing and an opportunity to participate . . . comports with [Florida's] regulations and observes whatever limitations the Due Process Clause may impose on clemency proceedings." Id. at 1316–17 (alteration in original) (quoting Woodard, 523 U.S. at 290, 118 S. Ct. at 1254 (O'Connor, J., concurring)). But we never held that the Due Process Clause requires Florida to comply with its own clemency procedures.

12

1741, 1748 (1983) (explaining that "[p]rocess is not an end in itself" and holding that a State's creation of administrative procedures "does not create an independent substantive right" under the Due Process Clause); cf. Snowden v. Hughes, 321 U.S. 1, 11, 64 S. Ct. 397, 402 (1944) ("Mere violation of a state statute does not infringe the federal Constitution.").

Finally, Gissendaner points us to a line of Eighth Circuit decisions, which interpreted Justice O'Connor's concurring opinion in Woodard to mean that "[t]he Constitution of the United States does not require that a state have a clemency procedure, but . . . it does require that, if such a procedure is created, the state's own officials refrain from frustrating it by threatening the job of a witness." Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000); see Noel v. Norris, 336 F.3d 648, 649 (8th Cir. 2003) ("[I]f the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated."). But see Winfield v. Steele, 755 F.3d 629, 631–32 (8th Cir. 2014) (en banc) (Gruender, J., concurring) (arguing for the overruling of Young because it misinterpreted Woodard and "runs counter to the weight of authority from other courts"). That is essentially the same reading of Woodard that Gissendaner adopts. And like her reading, it cannot be squared with what Justice O'Connor's opinion actually says or with the great run of Supreme Court decisions refusing to transform violations of state law into federal due process claims.

13

**AFFIRMED.**

JORDAN, Circuit Judge, concurring:

I join all but Part II.C of the majority opinion and concur in the judgment. Ms. Gissendaner's allegations do not state a due process claim given our interpretation in *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1268 (11th Cir. 2014), of Justice O'Connor's controlling opinion in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288-90 (1998) (O'Connor, J., concurring). Because I agree with the majority that *Wellons* governs, I do not think it is necessary to address how we would read *Woodard* if *Wellons* were distinguishable.