# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1822

_____

Ledell Lee; Marcel Wayne Williams; Kenneth Dewayne Williams

*Plaintiffs - Appellants*

Bruce Earl Ward; Jason Farrell McGehee

*Plaintiffs*

Stacey Eugene Johnson

*Plaintiff - Appellant*

Jack Harold Jones, Jr.

*Intervenor*

v.

Asa Hutchinson, in his official capacity; Wendy Kelley, in her capacity as Director

*Defendants - Appellees*

Arkansas Department of Correction; Arkansas Parole Board

*Defendants*

John Felts, in his official capacity; John Belken, in his official capacity; Andy
Shock, in his official capacity; Dawne B. Vandiver, in her official capacity; Jerry
Riley, in his official capacity; Abraham Carpenter, Jr., in his official capacity;
Lona McCastlain, in her official capacity

*Defendants - Appellees*

_____

Motion for Stay of Execution

_____

United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 19, 2017
Filed: April 20, 2017

_____

Before WOLLMAN, LOKEN, RILEY, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

PER CURIAM.

Four Arkansas death-row inmates appeal the denial of their motions for a preliminary injunction prohibiting the execution and move this court for a stay of execution. For the reasons below, we deny this motion.

On February 27, 2017, Arkansas Governor Asa Hutchinson scheduled executions for eight inmates to take place over the course of eleven days in April 2017. Several weeks later, the inmates brought two consolidated challenges seeking to prevent their executions. In the first challenge, all eight inmates argued that the State's method of execution, by itself and in combination with the execution schedule, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. We vacated the district court's order granting a preliminary injunction in that case. *See McGehee v. Hutchinson*, No. 17-1804, slip op. at 8 (8th Cir. Apr. 17, 2017). In this second collective challenge, inmates Ledell Lee, Marcel Williams, Kenneth Williams, Bruce Ward, Jason McGehee, and Stacey Johnson

-2-

challenged the application of the State's clemency procedure, arguing that the Arkansas Parole Board ("the Board") violated numerous Arkansas statutes, regulations, and policies and thereby violated their due process rights. This matter comes before us now.

After conducting a three-day hearing, the district court[1] denied the State's motion to dismiss and also denied a motion for preliminary injunction brought by the inmates. As the inmates stress, the district court concluded that the clemency process was "at times imperfect" under Arkansas law, regulations, and policies, because (1) notice to stakeholders did not comply with statutory requirements; (2) the Board held hearings within thirty days of the execution date; (3) the clemency deadlines were moved forward, depriving inmates of several additional days to put their applications together; and (4) the clemency hearings were reduced from two hours to one hour. Notwithstanding these findings, however, the district court concluded that the clemency procedure still satisfied minimal due process and that there was insufficient evidence that the "imperfections, the deviations from procedure . . . made a real difference." Four of the six inmates appeal the denial of their motions for preliminary injunction, arguing that the Board's procedures violated their due process rights and made it functionally impossible for them to receive recommendations for clemency. The inmates also moved to stay their executions pending appeal. The judges in active service on this court voted to hear this motion initially en banc.

As we have previously explained, "a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Johnson v. Lombardi*, 809 F.3d 388, 390 (8th Cir. 2015) (per curiam) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). To prevail, inmates

---

[1]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

-3-

"must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Id.* (quoting *Hill*, 547 U.S. at 584). "It is not enough merely to file an action that can proceed under § 1983. A movant must present evidence to show a significant possibility of success on the merits of his claim." *Id.* (citations omitted).

At the broadest level, the inmates assert that the violations of Arkansas law, regulations, and policy during the clemency process violated the Due Process Clause of the Fourteenth Amendment. As an initial matter, we note that, to the extent the inmates argue that these irregularities *themselves* constitute a violation of their due process rights, this argument fails under well-established law. We agree with the Eleventh Circuit that adopting this argument

> would conflict with a long line of Supreme Court decisions holding that a violation of state procedural law does not itself give rise to a due process claim. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (decrying the notion that a violation of state prison regulations provides a basis for a procedural due process claim because it "creates disincentives for States to codify prison management procedures"); *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) (explaining that "[p]rocess is not an end in itself" and holding that a State's creation of administrative procedures "does not create an independent substantive right" under the Due Process Clause); *cf. Snowden v. Hughes*, 321 U.S. 1, 11 (1944) ("Mere violation of a state statute does not infringe the federal Constitution.").

*Gissendaner v. Comm'r, Ga. Dept of Corr.*, 794 F.3d 1327, 1333 (11th Cir. 2015). Thus, even if the inmates are correct that the Board failed to comply with Arkansas law, regulations, and policy, this in and of itself is insufficient to demonstrate a significant possibility of success on the merits.

The inmates raise two principal arguments in their motion for stay of execution. First, they contend that the manner in which the Board conducted their clemency process constitutes a violation of their right to due process. However, as the district court observed, the inmates have a steep hill to climb in making this claim. "Because clemency is extended mainly as a matter of grace, and the power to grant it is vested in the executive prerogative, it is a rare case that presents a successful due process challenge to clemency procedures themselves." *Noel v. Norris*, 336 F.3d 648, 649 (8th Cir. 2003) (per curiam). Indeed, the Arkansas Constitution vests the governor with "power to grant reprieves, commutations of sentences, and pardons, after convictions; and to remit fines and forfeitures, under such rules and regulations as shall be prescribed by law," Ark. Const. Art. VI, sec. 18, and such clemency decisions are generally unreviewable under state law, *see id.*; Ark. Code Ann. § 16-93-204. That said, in *Ohio Adult Parole Authority v. Woodard*, a divided Supreme Court recognized that "some *minimal* procedural safeguards apply to clemency proceedings." 523 U.S. 272, 289 (1998) (O'Connor, J., concurring).

Based on the record before us, we conclude that the district court was correct in determining that, despite the procedural shortcomings in the clemency process, the inmates received the minimal due process guaranteed by the Fourteenth Amendment. Our *en banc* decision in *Winfield v. Steele*, 755 F.3d 629 (8th Cir. 2014) (per curiam), is instructive. In that case, a prison staff member was dissuaded from filing a letter in support of a Missouri inmate's clemency application. Despite this irregularity, which went to the very heart of the merits of the inmate's clemency appeal, we vacated a related district court grant of a motion to stay, finding that, although "the procedures employed by the state actors in this case may not have been ideal . . . they do not approach the arbitrariness contemplated by Justice O'Connor in *Woodard*: a coin flip or an arbitrary denial of access to any clemency process." *Id.* at 631. As the procedural irregularities here are even less consequential than those in *Winfield*, especially given that they did not affect the ability of the Board to give "due and serious consideration to each of [inmates'] applications," we are compelled to

conclude that the inmates here have not demonstrated a significant possibility of success on the merits of their claim.

Second, the inmates suggest that the district court abused its discretion in determining that their procedural impossibility claim "evaporated" at the moment the Board recommended against granting clemency. A straightforward reading of the Arkansas statute underlying this argument shows why the inmates are incorrect as a matter of state law. Section 16-93-204(e) requires that the Board provide thirty-day notice "before submitting to the Governor a recommendation that an application for pardon, commutation of sentence, or remission of fine or forfeiture be granted." Thus, there is simply no requirement to provide notice in the alternative scenario, where the Board recommends against granting clemency. For this reason, the district court explained, it granted a stay as to inmate McGehee, held in abeyance inmate Jones's motion to stay, and denied the preliminary injunction as to the other inmates.

Accordingly, the inmates have not shown a significant possibility of success on the merits, and their motion for stay is denied.

KELLY, Circuit Judge, dissenting.

On February 27, 2017, the Governor of Arkansas set execution dates for eight men over the course of eleven days, beginning with two executions on the night of April 17, 2017, and then two more on each of April 20, 24, and 27, 2017. The four appellants here are set to be executed on April 20, 24, and 27. At most, this schedule left appellants with 59 days for their clemency process.

The truncated timeframe for appellants to pursue clemency violated numerous provisions of Arkansas law and policies governing the clemency process. Arkansas requires filing deadlines for clemency petitions to be set no later than 40 days prior

to the execution. Ark. Admin. Code § 158.00.1-4.8. But here, the district court found that filing deadlines for several appellants were set less than 40 days before execution. This schedule left Lee and Johnson with 11 days to prepare their applications, Marcel Williams with 16 days, and Kenneth Williams with 18 days. Arkansas' statute also states that the Parole Board "shall solicit the written or oral recommendation" from the committing court, the prosecuting attorney, the county sheriff, and, if requested, the victim or victim's next of kin before the Board considers an application. Ark. Code Ann. § 16-93-204(d). The statute additionally requires that the Board "shall notify the victim or the victim's next of kin" of the clemency hearing. Id. The district court held that appellants "made a substantial showing that the statutorily required notice to stakeholders was . . . not made as the law requires." Although the Parole Board's Policy Manual states that applicants are entitled to two-hour hearings, the district court found appellants were limited to one hour to present their evidence and arguments. Finally, the Parole Board must notify the public and all stakeholders of its recommendation that clemency be granted 30 days before submitting it to the Governor. Ark. Code Ann. § 16-93-204(e). Therefore, the clemency hearing must be held at least 30 days prior to the execution date.[2] Ark. Admin. Code § 158.00.1-4.8. None of the appellants' clemency hearings occurred 30 days before their executions dates, leading the district court to conclude that "the schedule that was followed made it impossible simply in terms of the calendar for the board to comply with this orderly procedure . . . that is outlined in the law."

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

---

[2]The district court found that the Parole Board made an exception to the 30-day policy here, and approved setting the dates less than 30 days before the appellants' execution dates. It did not find that the Parole Board approved any other exceptions to the clemency procedures. Nor could it make any exceptions to procedures guaranteed by statute.

is in the public interest." Glossip v. Gross, 135 S. Ct. 2726, 2736–37 (2015) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). We review a district court's ruling on a motion for preliminary injunction and stay of execution for abuse of discretion. Nooner v. Norris, 491 F.3d 804, 807 (8th Cir. 2007). "An abuse of discretion occurs when the district court bases its decision on an erroneous application of the law or a clearly erroneous finding of fact." See Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 967 (8th Cir. 2005). I find no clear error in the factual conclusions reached by the district court, but, applying the appropriate legal analysis, I conclude that the appellants have made a showing of a significant possibility that they are likely to succeed on the merits of their due process claim. Because the remaining interests also favor the appellants, I conclude a grant of the stay of execution is warranted.

The Supreme Court in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998), recognized that death row inmates have a due process interest in their state clemency proceedings. The holding in that case was provided by Justice O'Connor's concurring opinion. See Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1268, 1269 n.2 (11th Cir. 2014). Her opinion acknowledges that the "life" interest protected by the Due Process Clause guarantees "some minimal procedural safeguards" for state clemency proceedings involving death row inmates. Woodard, 523 U.S. at 289 (O'Connor, J., concurring). Justice O'Connor provided two examples of possible due process violations: where "a state official flipped a coin to determine whether to grant clemency" or where "the State arbitrarily denied a prisoner any access to its clemency process." Id. The opinion then reviewed the clemency procedures provided by Ohio, and found that the respondent had not alleged a due process violation because "[t]he process respondent received . . . comports with Ohio's regulations and observes whatever limitations the Due Process Clause may impose on clemency proceedings." Id. at 290.

The appellants here argue that Arkansas violated their due process rights by arbitrarily denying them clemency procedures required by Arkansas law, without which they could not meaningfully access the clemency process. They concede that Arkansas' procedures, if followed, comport with the "minimal procedural safeguards" required by Woodard. But, they contend that Arkansas' failure to follow its own procedures constitutes a violation of Due Process because these failures implicate their right to notice and an opportunity to be heard, and make it impossible to benefit from a grant of clemency.

Before today, our court had not addressed the specific question presented—namely, whether a clemency applicant facing execution can state a due process claim alleging that the state arbitrarily denied him the procedures explicitly set forth by state law. Justice O'Connor's opinion suggests that compliance with state statutory procedures is a component of the minimal procedural safeguards to which death row clemency applicants are entitled. See Woodard, 523 U.S. at 289–90 (O'Connor, J., concurring) (finding no due process violation where "[t]he process respondent received . . . comports with Ohio's regulations" and specifically noting that "the Ohio Adult Parole Authority complied with all [the Ohio Death Penalty Clemency Procedure] instructions here," including timely sending notice of and setting the hearing date). Relying on Woodard, the majority of circuits appear to permit such a claim. For example, in analyzing a claim similar to the one brought here, the Tenth Circuit held that "the minimal application of the Due Process Clause only ensures a death row prisoner that *he or she will receive the clemency procedures explicitly set forth by state law*, and that the procedure followed in rendering the clemency decision will not be wholly arbitrary, capricious or based upon whim, for example, flipping a coin." Duvall v. Keating, 162 F.3d 1058, 1061 (10th Cir. 1998) (emphasis added) (citing Woodard, 523 U.S. at 289 (O'Connor, J., concurring)). The Tenth Circuit applied this standard again in Gardner v. Garner, 383 F. App'x 722, 726 (10th Cir. 2010) ("We must focus solely on the Board's compliance with its own rules and its avoidance of wholly arbitrary or capricious action."). Other courts appear to

be in accord with this view. See Tamayo v. Perry, 553 F. App'x 395, 402 (5th Cir. 2014) ("We conclude that he has failed to show a substantial likelihood that he could demonstrate the Board violated its policies."); Baze v. Thompson, 302 S.W.3d 57, 60 (Ky. 2010) ("This minimal application requires only that a death row prisoner receive the clemency procedures explicitly set forth by state law."); see also Mann v. Palmer, 713 F.3d 1306, 1316 (11th Cir. 2013) (holding due process claim would be futile because "Florida law did not obligate the Governor to grant Mann a second clemency hearing before he signed Mann's current death warrant").

However, some courts have been hesitant to grant relief based on the contention that the clemency procedure did not accord with state law. For example, two members of the Eleventh Circuit, in dicta, in Gissendaner v. Comm'r, Georgia Dep't of Corr., 794 F.3d 1327, 1333 (11th Cir. 2015) held that "[n]othing in Justice O'Connor's concurring opinion suggests that a clemency board's compliance with state laws or procedures is part of the 'minimal procedural safeguards' protected by the Due Process Clause." In support of this conclusion, the court cited Supreme Court cases holding that state prison regulations do not create a liberty interest under the Due Process Clause. Id. (citing Sandin v. Conner, 515 U.S. 472, 482 (1995) and Olim v. Wakinekona, 461 U.S. 238, 250–51 (1983)). But here, the appellants do not rely on Arkansas' clemency procedures to establish their due process interest; such an interest in "life" is already established by Justice O'Connor's opinion in Woodard. Rather, they rely on Arkansas' procedural rules at step two of the due process analysis, as evidence that the procedures followed by the state were constitutionally insufficient. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty[, life,] or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." (citations omitted)); see also Woodard, 523 U.S. at 293 n.4 (Stevens, J., dissenting) ("[H]aving established [clemency] proceedings, they

-10-

must comport with due process." (citing Evitts v. Lucey, 469 U.S. 387, 393, 400–01 (1985))).

Prior to today, our circuit had not explicitly taken a position on the viability of the claim the appellants bring here. However, several cases indicated that such a claim should be available. See Noel v. Norris, 336 F.3d 648, 649 (8th Cir. 2003) ("[W]e cannot say that the process was so arbitrary as to be unconstitutional or that the state prohibited Mr. Noel from using the procedure that it had established."); Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000) (holding that due process violation in state clemency proceeding can occur where the state "unconscionably interferes with a process that the State itself has created"); Whitmore v. Gaines, 24 F.3d 1032, 1034 (8th Cir. 1994) ("In this case, the board conducted its clemency proceedings in accord with the procedures set forth in the state statute, thus fulfilling its obligations to Whitmore."); see also Winfield v. Steele, 755 F.3d 629, 632, 634 (8th Cir. 2014) (en banc) (five members of the court relied on a standard similar to the Tenth Circuit's).

Although the state standards alone do not dictate the process that is due, see Swarthout v. Cooke, 562 U.S. 216, 221–22 (2011) (per curiam), here, the appellants' claim relies on the violations of state procedural rules to demonstrate that they were arbitrarily denied the ability to benefit from the clemency process. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) ("We have emphasized time and again that '[t]he touchstone of due process is protection of the individual against arbitrary action of government.'" (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974))). Specifically, Arkansas Statute § 16-93-204(e) requires the Parole Board to issue a public notice and notice to all stakeholders of its intention to recommend that the Governor grant an applicant's clemency application at least 30 days or more before submitting said recommendation. Because none of the appellants' clemency hearings were scheduled 30 days before their execution dates, the appellants would have been executed before the Governor could, consistent with the statutorily

-11-

required procedure, act on their clemency applications. Only a stay of execution from the court, such as the one the district court issued for Jason McGehee, could have ensured appellants' constitutional right to "any access to [Arkansas'] clemency process." Woodard, 523 U.S. at 289 (O'Connor, J., concurring). The district court was not clearly erroneous in concluding that "it was impossible from the beginning, once the schedule was laid in, it was impossible for the board to comply. That speaks to me of interference and arbitrariness." See Young, 218 F.3d at x853 (due process violation where the state "unconscionably interferes with a process that the State itself has created").

As the appellants correctly point out, the fact that only McGehee and none of the others received a clemency recommendation from the Board has no bearing on the analysis. See Carey v. Piphus, 435 U.S. 247, 266 (1978) ("It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing . . . ." (quoting Fuentes v. Shevin, 407 U.S. 67, 87 (1972))); Duvall, 162 F.3d at 1061 ("We underscore that our review is limited to analyzing the procedures used during the clemency proceedings and not the substantive merits of the clemency decision."). Requiring a clemency applicant to show that he would receive a grant recommendation from the Board in order to obtain a clemency process that would permit time for the Governor to grant clemency puts the cart before the horse. Thus, I disagree with the court's conclusion that, because the Board recommended granting clemency for McGehee, he should be treated differently from the appellants. The arbitrary denial of state procedural protections based on the appellants' success (or lack thereof) at their procedurally-compromised clemency hearings should not be sanctioned after the fact.

Appellants have also shown that they have a significant possibility of succeeding on their due process claim because the state procedural violations implicate their right to notice and an opportunity to be heard in the clemency process.

-12-

Such rights are fundamental to due process. See Morrissey v. Brewer, 408 U.S. 471, 485–89 (1972). The district court did not clearly err in finding that the appellants "made a substantial showing that the statutorily required notice to stakeholders was inadequate, that it was not made as the law requires." It specifically concluded that while government officials, such as the Attorney General, received notice of the appellants' applications, other stakeholders, such as victims, the victims' next of kin, and the committing judges, likely did not. The district court found such "disparate treatment of some stakeholders" "is arbitrary." It further found the lack of notice "important . . . on the due process component of a meaningful opportunity to be heard." See Wolff, 418 U.S. at 564 (finding in the parole context that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense"). The district court connected the lack of notice to stakeholders to the appellants' ability to present their cases to the Board, concluding that statements from a prosecutor or judge "are very powerful pieces of evidence in the clemency process." The only death row inmate to receive a clemency recommendation, the district court noted, had submitted a letter from a judge to the Board. The appellants assumed that notice was provided in accordance with the statute when preparing their clemency applications, when in fact, it had not been. See Wilson v. U.S. Dist. Court for N. Dist. of California, 161 F.3d 1185, 1187 (9th Cir. 1998) ("Siripongs' assertion that the state's communications misled his counsel about the issues to be considered in the clemency proceeding states a claim of a violation of due process."). Without this notice, the appellants were deprived of a key source of evidence to support their clemency applications.

I conclude that the lack of notice in combination with the other statutory violations—such as the shortened period to prepare applications, the reduction in the hearing time, and the impossibility that the Governor could act on the recommendation of a grant of clemency in the time allotted—create a significant possibility that the appellants can succeed in showing that the procedure followed in rendering their clemency decisions was wholly arbitrary. See Faulder v. Texas Bd.

-13-

of Pardons & Paroles, 178 F.3d 343, 345 (5th Cir. 1999) (examining petitioner's objections to parole board's procedures "either individually or cumulatively under the facts of this case"). The deviations from the procedural rules in this case were magnified by the fact that the Board was faced with six death row inmates' clemency petitions, which the district court found "generally bewildered" the state and "led to error." Because of Arkansas' procedural failures, the appellants here did not have "ample opportunity to present [their] best case to the Board," nor did the Board or the Governor have time to give "it appropriate consideration." Faulder, 178 F.3d at 345.

The remaining factors also support granting a stay of execution. See Hill v. McDonough, 547 U.S. 573, 584 (2006). The only reason for the expedited clemency process and the abandonment of state clemency procedures was Arkansas' contention that all of the appellants' executions needed to be conducted before April 30 because the execution drugs Arkansas possessed were due to expire. By any measure, the appellants' interest in their own lives is stronger than the state's interest in their soon-to-expire drugs. Finally, members of the public, and in particular those impacted by appellants' executions, have an interest in notice and an opportunity to be heard during the clemency process.

Clemency proceedings have an important role to play in the administration of the death penalty. See Harbison v. Bell, 556 U.S. 180, 194 (2009) (holding that the Criminal Justice Act, 18 U.S.C. § 3559(e) authorizes federally appointed counsel to represent death row prisoners in state clemency proceedings); id. at 192 ("Far from regarding clemency as a matter of mercy alone, we have called it the fail safe in our criminal justice system." (quotation omitted)); Herrera v. Collins, 506 U.S. 390, 411–12 (1993) (recognizing that "[c]lemency is deeply rooted in our Anglo–American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted" (footnote omitted)). Although the outcome of the clemency process is fully in the discretion of the executive, the clemency procedures cannot be arbitrarily applied against the

-14-

appellants such that they are denied notice and a fair opportunity to present their application.  Because I find that the appellants have made a showing of a significant possibility that they were denied due process in their clemency proceedings and the balance of equities tips in their favor, I would grant the motion to stay the executions.

_____